G. MEYSENBERG, Respondent, v. B. H. ENGELKE, Appellant.

St. Louis Court of Appeals, June 9, 1885.

1. EVIDENCE—PRIVILEGED COMMUNICATIONS—ATTORNEY AND CLIENT. —Conversations between a prosecuting witness and an attorney who was voluntarily assisting the state's attorney, are not privileged in a subsequent action against such witness for malicious prosecution.

2. CRIMINAL LAW—MALICIOUS PROSECUTION.—The institution of a criminal prosecution for the purpose of coercing a debtor into paying his debt is malicious in a legal sense.

3. —— PROBABLE CAUSE.—An action for malicious prosecution can

not be maintained where it is shown that there was probable cause for such prosecution, irrespective of the motive of the prosecutor.

4. —— The question of probable cause is a mixed one of law and of fact, and it is error to submit it to the jury upon a general definition merely.

·5. —— It is error to refuse to supplement instructions defining probable cause by telling the jury what acts constitute the crime for which the plaintiff had been prosecuted.

APPEAL from the St. Louis Circuit Court, ADAMS, J.

*Reversed and remanded.*

DAVIS & DAVIS, for the appellant: The testimony of Samuel Hermann, attorney for the state in the criminal action against Meysenburg, was incompetent. Revised Statutes of Missouri, § 4017, p. 90; *Cross v. Riggins,* 50 Mo. 335; *Hull v. Lyon,* 27 Mo. 570; *Johnson v. Sullivan,* 23 Mo. 434. The books read in evidence, as the books of the Excelsior Distilling Company, were incompetent. They were not identified as such books. The attorney for the plaintiff was not upon oath when he read from the same. 1 Greenleaf on Evidence (13th Edition) § 571, p. 620; *Collins v. Bayatum,* 1 Ad. & E. C. U. S. 117; Phillips on Evidence (10th English Edition) vol 2, p. 480; 1 Starkie on Evidence (9th Am. Ed.) p. 458, * 503; *Lessees of Rhoades et al. v. Selin et al.,* 4 Washington C. C. R. 715–719. There was evidence of probable cause for the prosecution, which is a question for the court. *Stone v. Crocker,* 24 Pickering 81–84; *Good v. French,* 155 Mass. 201; *People v. Kendall,* 25 Wendell 399; *Clifford v. State,* 56 Indiana 245; *State v. Timmons,* 58 Indiana 98; *Commonwealth v. Horby,* 7 Metcalf 462; *Sandy v. State,* 60 Alabama 58; *State v. Vorback,* 66 Mo. 169. The jury were instructed that they must find want of probable cause to believe the plaintiff guilty of a crime, when the court refused to instruct the jury as to what constituted the crime. *State v. Newell,* 1 Mo. * 248 p. 146; *State v. Vorback,* 66 Mo. 169.

ALBERT ARNSTEIN and W. C. JONES, for the re-

spondent: The entries in an account book of a defendant are always admissible in evidence against him, as admissions against interest, and the presumption of law is that they were properly kept. *St. Louis Gas Co. v. City of St. Louis*, 11 Mo. App. 55–75; *St. Louis Gas Light Co. v. City of St. Louis*, 12 Mo. App. 573; 2 Wharton Ev. Par. 1131; *Foster v. White Cloud City Co.*, 32 Mo. 505. Evidence of other statements made to third persons, with no intent that they should reach defendant, were properly excluded. *Christman v. Carney*, 33 Ark. 316; *Patterson v. Carlock*, 39 Mich. 447; *Degenhart v. Schmidt*, 7 Mo. App. 117; *Carson v. Edgeworth*, 43 Mich. 241. The instructions given to the jury upon the question as to where advice of counsel will protect defendant from liability for malicious prosecution, are fully in accord with the law as declared in *Sharpe v. Johnson*, 76 Mo. 660; also, 59 Mo. 557; *Vansickle v. Brown*, 68 Mo. 635; *Sparling v. Conway*, 75 Mo. 510; *Hill v. Palm*, 38 Mo. 13: *Sappington v. Watson*, 50 Mo. 83.

THOMPSON, J., delivered the opinion of the court.

This action was brought for a malicious prosecution against Barnett H. Engelke, Louis F. Engel, John L. Bernecker, and the Excelsior Distilling Company, a corporation. At the trial the plaintiff dismissed as to Engel and Bernecker. The jury returned a verdict for Engelke, and a verdict in favor of the plaintiff against the Excelsior Distilling Company for $300.00. Judgment was entered on the verdict, and the Excelsior Distilling Company appealed.

Counsel for the appellant seem to have exhausted all the possibilities of the record in multiplying objections. We shall address ourselves only to those which seem to be of a substantial character.

1. There is no error in permitting the witness, Hermann, to testify as to communications which had passed between him and the defendant, Engelke, touching the criminal prosecution against the plaintiff. Although Hermann nominally represented the state in that prosecution, he never was the attorney of any of the defendants touch-

ing it, and any communications which may have passed between him and them with reference to it were not, therefore, within the rule of privilege which protects communications between attorney and client.

2. The court committed no error in submitting the case to the jury. There was evidence tending to show that the warrant was sworn out by the defendant, Engelke; that this defendant was at the time the treasurer of the Excelsior Distilling Company, and had charge of its legal business; that before instituting the prosecution he had consulted the president of the company, Mr. Bernecker, who had told him to do what he thought proper; that the prosecution was upon a charge of obtaining $400.00 in money, and three barrels of liquor from the Excelsior Distilling Company, by false pretenses; and that one-half of the fee, charged by the stenographer for taking notes of the testimony at the examination in the court of criminal correction, was paid by the Excelsior Distilling Company, and entered upon the books of such company. It also appeared that the plaintiff had failed a month after obtaining the money and the goods in question, and had assigned all his property, including his book accounts, to his brother, T. A. Meysenberg, in payment of a large indebtedness due by him to the latter; that the criminal prosecution was instituted seventeen days after this assignment, and that, while the prosecution was pending in the court of criminal correction, a proposition was made by those in charge of it to the attorney of the plaintiff (defendant in that prosecution), to settle the matter if he would pay fifty cents on the dollar of the debts which he owed to the Excelsior Distilling Company, and to clients of Mr. Hermann, the attorney who was conducting the prosecution. We take it that the testimony was such that the jury were authorized to infer from it that the criminal prosecution against the plaintiff had been concocted by Hermann, representing certain creditors of the plaintiff, and Engelke representing the Excelsior Distilling Company; that the object of the prosecution was to coerce the plaintiff, or his friends, into paying what he owed the clients of Hermann and the Ex-

celsior Distilling Company, in whole, or in part, and that the expenses of the prosecution were divided between the clients of Hermann and the Excelsior Distilling Company. If this was the object of the prosecution, it was malicious in a legal sense, as the court instructed the jury.

3. But though this may have been the motive of the prosecution, the defendants were not liable unless there was no probable cause for instituting it; because, if there was probable cause for instituting it, they had a legal right to institute it, and where a person has a legal right to do a thing, the law does not concern itself with the motive with which he does it. Whether there was probable cause for instituting the prosecution was, therefore, the most important inquiry in the case. Upon this question, the plaintiff's testimony tended to show that he had for several years done business as a dealer in liquor under the name of C. Meysenberg & Company; that he had been a constant customer of the Excelsior Distilling·Company; that he had bought goods of them to the extent of from $600.00 to $1,200.00 per month, giving his note for thirty days at the end of each month for the aggregate value of the goods purchased during that month; that, on or about the 1st of May, 1883, having a note of over $700.00 in bank, given by him to the Excelsior Distilling Company for goods of the previous month, which note would mature on the 5th of May, he applied to the Excelsior Distilling Company for a loan of $400.00 to use in taking up this note; that this loan was made to him in cash by them and was so used by him; that for this loan he gave them his promissory note for $400.00, maturing at thirty days, which note was never paid; that on the 4th of May, he sent his porter to the Excelsior Distilling Company for three barrels of whiskey, which were furnished to him in the ordinary course of business, as they had often done before; that at the time this money was advanced and these goods sold to him, no special representations were made by him to the Excelsior Distilling Company, touching his financial condition; but that a month later he was obliged by his brother, T. A. Meysenberg, who had furnished him with the capital with which to carry on his

business, to assign all his property to the latter in payment of his indebtedness to the latter. On the other hand, the defendant's testimony tended to show that, at the time when the plaintiff obtained from the Excelsior Distilling Company this advance of money and these goods, he represented to them that he owed no one but them, except one or two small bills amounting to not more than $200.00; that these representations were false; that he was indebted to several other persons in large sums, and that, if his own subsequent claim was true, he was also indebted to T. A. Meysenberg for the entire capital with which he carried on his business.

If the plaintiff's testimony was true, the $400.00 which was advanced by the Excelsior Distilling Company to the plaintiff was merely in the nature of a renewal of that much of his existing indebtedness to them, and the three barrels of whiskey which they sold to him at the same time, they sold to him in the ordinary course of their dealings with him, and in consequence of the general opinion of his solvency, obtained from the fact that he had been in the habit of meeting his obligations to them previously; and, consequently, there was no probable cause furnished by these transactions for instituting a criminal prosecution against him for obtaining money and goods under false pretenses. On the other hand, if the state of facts which the defendant's testimony tended to prove was true, there was such probable cause.

4. This brings us to the next substantial question, namely: Whether the case was properly put to the jury. It is often said in the books that, in actions for malicious prosecutions, the question whether there was probable cause for instituting the prosecution is a question of law for the court. This proposition does not mean that it is the province of the court to decide upon conflicting evidence whether there was, or was not, such probable cause, but that where the evidence is not conflicting, or where the facts are conceded, it is the province of the court to tell the jury whether the facts do, or do not afford such probable cause. Where, as in this case, the evidence as to the facts is conflicting, it is the duty of

the court to tell the jury whether the hypothetical state of facts which the evidence of each party tends to prove, does, or does not, if found by them to exist, afford such probable cause. As a general rule, it is error for the court in instructing the jury to submit a question of law to them for determination. And, hence, in an action for malicious prosecution, it is error for the court to submit to the jury generally, the question whether there was, or was not, probable cause for the prosecution. This the court did in the present case. The instructions, as here given authorized the jury to decide, not only the effect in law of whatever knowledge the defendants may have had of the plaintiff's acts, but, also, the purely legal question, whether the acts of the plaintiff, thus coming to the knowledge of the defendants, were sufficient to constitute an indictable offence. We believe that no authoritative case can be found, in which such an instruction, thus standing alone, has been sustained. In *Sharpe v. Johnson* (59 Mo. 557, and 76 Mo. 660), a similar definition of probable cause was given to the jury, but it was carefully guarded with hypotheses framed upon the evidence, informing the jury what facts, if proved to their satisfaction, would, or would not be sufficient in law to establish the defence. Such is the general, and beyond question, the only safe practice. The present record abounds in material for such explanatory hypotheses. The court might properly have supplied them of its own motion, but was not bound to do so. When not thus supplied, their absence must be fatal to the instruction given in general terms, because of its direct tendency to mislead the jury as to the nature of their duties, in submitting to them questions which it is not within their competency to determine. Said the supreme court of the District of Columbia in *Tolman v. Phelps* (12 Wash. L. Rep. 587): "It is settled here and everywhere that it is for the court to tell the jury what facts would constitute probable cause. Substantially, the court only told the jury the rule of law, that probable cause was what a reasonable, intelligent man would think justified him in making the charge. It is not everybody who is supposed

to know, neither prosecutor nor jury, what facts make up a crime, and, therefore, it is necessary that the court should tell the jury what facts justify a person in alleging crime. The court did not follow that course, but really gave the jury to suppose that they might examine all that testimony and make up their own minds as to what would constitute probable cause." See also *Hill v. Palm*, 38 Mo. 22 ; *Sharpe v. Johnson*, 76 Mo. 660 ; 2 Greenleaf Ev., sect. 454. But for reasons which will be stated hereafter, this error is not such as to oblige us to reverse the judgment.

5. The court refused to give to the jury several appropriate instructions submitted by the defendants, as to what were the ingredients of the offence of obtaining goods under false pretenses under the law of this state. The court, therefore, not only submitted to the jury upon the whole case the question whether there was or was not probable cause for instituting the criminal prosecution, but refused even to define to them the grounds on which such a prosecution may be lawfully instituted, although requested to do so by the defendants. By thus refusing to give the jury any special guide by which to determine this question of law, the error of submitting it to the jury became the more palpable and the more obviously prejudicial. Nor was this error cured by that part of the instruction given at the request of the defendant, "that by the words, 'probable cause,' as used in the instructions of the court, is meant a belief by the defendants, or either of them, in the guilt of the accused, based upon circumstances sufficiently strong in themselves, to induce such belief in the mind of a reasonable and cautious man." If the court had instructed the jury properly upon hypothetical facts submitted to them as to this question of probable cause, the general instructions submitted by the defendants as to what constitutes the obtaining of goods under false pretenses, would have been properly refused.

6. It is perceived that these two rulings present for determination a very peculiar question, namely, this:

the court, at the request of a party, submits a question
of law to the jury.   At the same time the court refuses
additional instructions requested by such party, which
instructions if given, would assist the jury in determin-
ing this question of law.   Is this an error of which the
party asking these instructions can complain ? We think
it is.   Obviously, the defendants can not complain that
the court upon their request left it to the jury to say
generally whether this criminal prosecution for obtaining
money and goods by false pretenses, was instituted
without probable cause.   But, in order to enable them to
determine this, it is necessary for them to have some
understanding of the nature of the crime.   This the
defendant offered to supply by further instructions, and
these instructions the court refused to give, at the same
time giving no equivalent instructions.   The jury were
left to determine the question whether there was probable
cause for instituting this prosecution upon less informa-
tion as to the law than the defendants had ; for they had
the advice of men learned in the law as to the ingredients
of this crime, and the facts on which a prosecution for
it may be sustained.   It is perceived that the case was
not put to the jury upon the defendants' theory.   Their
theory was that the jury was to decide the question of
probable cause upon full directions as to the law ; but
the court committed it to them for decision, at the same
time withholding from them full directions as to the law,
which were submitted by the defendants.   Although the
defendants' theory was erroneous, they are not concluded
by a ruling of the court which submitted the cause to the
jury upon a theory a great deal more erroneous.

We, therefore, think that for this error we must re-
verse the judgment and remand the cause.   It is so
ordered.   Judge Lewis concurs ; Judge Rombauer is
absent.