Albert W. LINKOGEL,
Plaintiff-Appellant,

v.

BAKER PROTECTIVE SERVICES, INC., Debbie S. Parashak, Steve Rogers, and Kevin Michael Stewart, Defendants-Respondents.

No. 46022.

Missouri Court of Appeals,
Eastern District,
Division Five.

Aug. 30, 1983.

Motion For Rehearing and/or Transfer to Supreme Court Denied Oct. 12, 1983.

Charles J. McMullin, St. Louis, for plaintiff-appellant.

Evans & Dixon, Gerre S. Langton, David O. Danis, Richard Alan Cooper, Whalen, Murphy, Reid, Danis, Garvin & Tobben, St. Louis, for defendants-respondents.

WILLIAM E. TURNAGE, Special Judge.

Albert Linkogel filed suit alleging that he was subjected to: (1) an unreasonable search and seizure; (2) unreasonable force in being placed under arrest; (3) false arrest; and (4) an assault and battery. Named as defendants in the suit were Steve Rogers and Kevin Stewart, two police officers employed by St. Louis County, and Debbie Parashak, a private guard, and her employer, Wells Fargo, a division of Baker Protective Services, Inc. Trial to a jury resulted in a verdict in favor of all defendants. On this appeal Linkogel contends the instructions given on behalf of Stewart and Rogers were erroneous, and that certain evidence was erroneously excluded as against Parashak and Baker. Affirmed as to Parashak and Baker and reversed and remanded as to Rogers and Stewart.

This is the second appeal in this case. The first is reported in *Linkogel v. Baker Protective Services, Inc.,* 626 S.W.2d 380 (Mo.App.1981). A full statement of facts appears in that case, and only those facts necessary to resolve the questions presented by this appeal will be stated.

Rogers and Stewart met Parashak shortly after 9:30 p.m. on May 26, 1977, at the entrance of a dirt road which entered Linkogel's property from an access road. The two officers joined Parashak in response to her call that she had met a man on Linkogel's property who refused to identify himself and who had threatened "to blow her away." Stewart and Rogers entered the dirt road on Linkogel's property in their police car, followed by Parashak in her Wells Fargo car. The two cars stopped after traveling a short distance and the three persons got out of their cars and began to look around. Shortly thereafter, Linkogel drove down the dirt road toward the two cars. The evidence is conflicting as to what happened thereafter. Linkogel's version is that he got out of the car and promptly identified himself by name and as the owner of the property. He stated his concern was that he did not want cars traveling over the dirt road because of the dust and because it was likely that cars would drive on his field of zoysia grass. Linkogel stated that he had a rifle standing upright on the passenger side of the car, with the butt on the floor and the barrel extending upward so that it was visible through the side window and windshield. His version was that Parashak pointed to the rifle, whereupon Rogers and Stewart grasped him and told him that he was under arrest for carrying a concealed weapon. Linkogel claimed that the officers then assaulted him in the process of placing him under arrest and handcuffing him.

Parashak stated that she had encountered Linkogel on the dirt road earlier, and that without identifying himself he had ordered her off the property with the statement that if she came back he would "blow her away." She stated that the rifle was standing upright in Linkogel's car and so was clearly visible. Parashak claimed she simply pointed to the rifle so that the officers would see it, but she denied having instigated or having encouraged the officers to arrest Linkogel.

Rogers and Stewart each testified that when Linkogel got out of his car he verbally abused the three officers because they had driven onto the dirt road. The officers stated that Linkogel did not identify himself and that because of his threat to Parashak they were concerned that he might have a weapon. The officers both testified that the rifle was not standing upright, but was laying on the floorboard of the front seat with the butt end on the transmission hump and the barrel on the passenger side. The officers were able to see the gun when Linkogel opened his car door and the interior lights came on. At that point the officers placed Linkogel under arrest for carrying a concealed weapon, but at trial they denied having used any excessive force. Both officers said that Linkogel refused to stand as directed so they could pat him down and they had to turn him around forcibly.

It was conceded that the prosecuting attorney refused to issue a warrant against Linkogel for carrying a concealed weapon. However, Linkogel did spend the night in jail.

■ In his appeal from the judgment in favor of Rogers and Stewart, Linkogel complains of the converse instructions. The instructions were identical as to Rogers and Stewart; only the name of the defendant was varied. The three converse instructions in question read as follows:

## INSTRUCTION NO. 10

Your verdict under Instruction No. 9 must be for Defendant Steve Rogers if you believe that Defendant Rogers had reasonable grounds or probable cause to believe that Plaintiff had a gun in such close proximity as to be within his easy reach and convenient control, which was not discernable by ordinary observation.

## INSTRUCTION NO. 12

Your verdict under Instruction No. 11 must be for Defendant Steve Rogers if you believe Defendant Rogers used only necessary means to affect Plaintiff's arrest.

## INSTRUCTION NO. 14

Your verdict under Instruction Number 13 must be for Defendant Steve Rogers if you believe the search of Plaintiff's automobile was incident to his lawful arrest, or Defendant Rogers acted in a good faith belief that the search was incident to a valid arrest, and Defendant used only necessary means to effect Plaintiff's arrest.

Each of the instructions above is of the type designated an affirmative converse instruction by the MAI. The facts hypothesized in an affirmative converse instruction must be sufficient in law to defeat the plaintiff's claim. *Shepard v. Ford Motor Company,* 457 S.W.2d 255, 258 (Mo.App.1970). See also MAI § 33.01 (1981 Revision), at 489. As illustrated hereinafter, the instructions in issue do not hypothesize facts sufficient in law to defeat Linkogel's claims, nor do such instructions appear in the MAI.

Instruction No. 10 was given as a converse to Instruction No. 9 which submitted that Rogers intentionally restrained Linkogel against his will. The trial theory of Linkogel was that since the gun was standing upright and clearly visible, no one could possibly have believed he was carrying a concealed weapon. The theory of Stewart and Rogers, based upon their testimony, was that the gun was on the floor and because of the darkness could not be seen until the car door was opened and the interior light came on. This was the basis of the officers' claim that they had probable

cause to arrest Linkogel for carrying a concealed weapon.

■ The question of probable cause for the arrest of a person is a mixed question of law and fact. 5 Am.Jur.2d *Arrest* § 49, at 741 (1962). If the evidence concerning the existence of probable cause is in conflict then the factual issues are for the jury to resolve. *Hoene v. Associated Dry Goods Corporation,* 487 S.W.2d 479, 483–84[7–9] (1972). However, where the evidence is not conflicting, or where the facts are conceded, this court ruled as early as 1885 that the relevant question is one of law for the court to decide. *Meysenberg v. Engelke,* 18 Mo. App. 346 (1885). *Meysenberg* also stated that when the evidence is conflicting it is the duty of the court to submit the question of probable cause to the jury by hypothesizing the evidence which each party has produced which tends to prove or disprove the existence of probable cause. *Id.* at 351. The general rule in accord with *Meysenberg* can be found in 5 Am.Jur.2d, *supra:* If the facts are disputed, it is the court's duty to instruct the jury as to what facts, if established, will constitute probable cause, and to submit to them only the question of the existence of those facts.

No party requested the court to pass on the question of probable cause as a matter of law. The trial theory of all parties was that the question of probable cause depended on which version of the location of the rifle was believed. Thus, resolution of the case on the trial posture adopted by all parties required that the jury determine whether the rifle was standing upright and clearly visible through the side window and windshield or whether it was on the floor so that it was not discernible by ordinary observation until illuminated by the car's interior lights.[1]

■ Instruction No. 10 failed to submit for the jury's resolution the question of fact as to the position of the gun in Linkogel's car. Since it was not told which facts would constitute probable cause, the jury was left to speculate as to the facts from which it could "find" probable cause. *Johnson v. Thompson,* 241 Mo.App. 1008, 236 S.W.2d 1, 12 (1950). Because the proper instruction would not have sanctioned such guesswork by the jury, the instruction as given was prejudicially erroneous.

In addition, Instruction No. 10 improperly submitted to the jury the question of law of whether or not Rogers and Stewart had reasonable ground or probable cause to believe that Linkogel had a gun not discernible by ordinary observation. As noted above, when the facts are unsettled the jury is to be instructed on which facts will constitute probable cause.

■ Finally, Instruction No. 10 improperly suggests to the jury that it decide whether the officers believed they had probable cause to arrest Linkogel. In determining want of probable cause, the test is not whether the defendant thought the facts constituted probable cause, but whether the court believes so. *Director General v. Kastenbaum,* 263 U.S. 25, 28, 44 S.Ct. 52, 53, 68 L.Ed. 146 (1923).

■ Linkogel next challenges Instruction No. 12. This converse attempted to submit the question of whether or not Rogers and Stewart had used only necessary means to arrest Linkogel. Under § 544.190 RSMo 1978 the officers had the right to use reasonable means to effect the arrest if Linkogel fled or forcibly resisted. Linkogel denied resisting arrest. The officers' testimony was that Linkogel did forcibly resist after he was informed he was under arrest. The instruction should therefore submit facts to the jury for its resolution of whether or not Linkogel forcibly resisted arrest. Instruction No. 12 is totally devoid of facts which the jury was required to find which would guide it subsequently in determining whether or not the officers were required to use *necessary means* to make the arrest in

---

1. No question is presented on this appeal as to whether or not there was probable cause as a matter of law to arrest Linkogel even if the rifle were said to be on the floor and easily discerni-

ble once the interior lights of the car came on. Thus, that question is neither discussed nor decided.

the face of a forcible resistance. In short, a factual question should have been submitted to the jury concerning the acts of Linkogel which would have required the officers to use some degree of force to place him under arrest. Such factual determination then is needed to guide the jury as to what reasonable means would have been appropriate upon the facts found. An instruction submitting whether or not an officer had used necessary means to make an arrest was approved in *Davis v. Moore,* 553 S.W.2d 559, 561 (Mo.App.1977). The distinction between *Davis* and the case at hand is that while the instruction in *Davis* required the jury to find that the defendant attempted to flee before being restrained, Instruction No. 12 failed to require the jury to find acts by Linkogel which would amount to forcible resistance of arrest.

 It is apparent that Instruction No. 14 also submitted a question of law, rather than one of fact, to the jury. The jury was called upon to decide whether or not the arrest of Linkogel was lawful. While the existence of sufficient facts to constitute probable cause for an arrest is a question for the jury, the lawfulness or validity of the the arrest is not a question of fact, but a question of law. *Ulibarri v. Maestas,* 74 N.M. 516, 395 P.2d 238, 240 (1964). See also 5 C.J.S. *Appeal and Error,* § 1454, at 591 (1958). Instruction No. 14 suggests to the jury that a question of law is a question of fact and this is erroneous. *Bartleman v. Humphrey,* 441 S.W.2d 335, 348 (Mo.1969).

Because the converse instructions given on behalf of Stewart and Rogers are erroneous, the judgment in their favor is reversed and this cause is remanded for further proceedings against the two officers.

 Linkogel contends in his appeal against Parashak and her employer, Baker, that the court erred in refusing to allow him to read to the jury from an exhibit which showed the net worth of Baker. This evidence was relevant only on the issue of punitive damages against Baker. It is fundamental that a jury must award actual damages before it is authorized to award punitive damages. *Koenig v. Skaggs,* 400 S.W.2d 63, 68[5, 6] (Mo.1966). In the case at hand the jury returned a verdict in favor of Parashak and Baker. Since the excluded evidence was admissible only on the issue of punitive damages, and the jury never awarded the prerequisite actual damages, it could not have considered punitive damages. When the jury's verdict demonstrates that it never reached the issue which is claimed to be the source of prejudice then no prejudice has been demonstrated. *Beesley v. Howe,* 478 S.W.2d 649, 653[9] (Mo.1972). Thus, there could be no prejudice in excluding Baker's net worth.

 Linkogel further states that this court in the previous appeal found that he had made a prima facie case against Parashak and Baker and thus, the error in excluding the net worth was prejudicial. This argument is wholly without merit, because this court in the prior appeal did not find that Linkogel was entitled to prevail as a matter of law, but only that his evidence was sufficient to make a jury case as against Parashak and Baker. The jury has now resolved that question against Linkogel.

The judgment in favor of Parashak and Baker is affirmed.

The judgment in favor of Stewart and Rogers is reversed and this cause is remanded for further proceedings as against Stewart and Rogers.

CRIST, P.J., and DONALD L. MANFORD and MELVIN W. WIESMAN, Special Judges, concur.