**Michael ERSKINE, Louise Geoffory, and Chris Westfall, Plaintiffs,**

v.

**WEST PALM BEACH, a Florida Municipality, Defendant.**

**No. 79–8094–Civ–WMH.**

United States District Court,
S. D. Florida,
West Palm Beach Division.

May 14, 1979.

---

Larry J. Roberts, Barry A. Fisher Law Offices, Los Angeles, Cal., Steven Wisotsky, Fort Lauderdale, Fla., for plaintiffs.

Carl V. M. Coffin, City Atty., and James R. Wolf, Asst. City Atty., West Palm Beach, Fla., for defendant.

## ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

HOEVELER, District Judge.

Plaintiffs, Michael Erskine, Louise Geoffory and Chris Westfall, members of the Holy Spirit Association for the Unification of World Christianity (the "Unification Church"), brought this civil rights action seeking to have West Palm Beach, Florida, Code Chapter 11, Article II (1978) declared unconstitutional and to enjoin its enforcement as to them.

The ordinance, entitled Charitable Solicitations, forbids solicitation of contributions for charitable purposes without a permit. A detailed application is required to obtain a permit, and a Charitable Solicitation Board is created for the purpose of investigating applicants. The Board is instructed to consider certain criteria in evaluating the application and to issue a permit if: (1) the requirements of the ordinance have been satisfied; and (2) there has been "no substantial and competent evidence . . . which . . . would demonstrate that said proposed solicitation would be injurious to the public health, safety, and general welfare of the City of West Palm Beach." An applicant may appeal a denial of a permit to the City Commission. The ordinance also provides for revocation of permits by the Commission, after a hearing, if the Commission finds that the permit holder no longer satisfies, or complies with, the ordinance. There are provisions entitling the Board to inspect the books and records of a permit holder, and mandating a report and accounting of funds at the conclusion of the solicitation.

This matter is presently before the Court on the Plaintiffs' motion for preliminary injunction. For purposes of this motion, the parties have stipulated that the following facts, found in the affidavit of Plaintiff Chris Westfall, are true; the Unification Church is a California nonprofit corporation, holding federal and Florida tax exemptions. Founded in 1954, it is established in 120 cities throughout the United States. The Church emphasizes evangelical missionary engagements and sponsors religious rallies, workshops, retreats and lectures. Included is door-to-door and public place proselytizing and solicitation of funds to support the Church. The Plaintiffs seek to distribute tracts and solicit contributions to support their Church in the City of West Palm Beach's municipal parks and on public sidewalks. The parties have further stipulated that if the Plaintiffs engage in the solicitation of funds for the Unification Church without a permit as required by the ordinance, the City will enforce the ordinance and the Plaintiffs will be prosecuted.

■ To prevail on their motion for preliminary injunction, Plaintiffs must show: (1) a substantial likelihood that they will prevail on the merits; (2) irreparable injury unless the injunction issues; (3) that the threatened injury to them outweighs whatever damage the injunction may cause the party opposing it; and (4) that granting the injunction would not be against the public interest. *Knights of the Ku Klux Klan v. East Baton Rouge Parish School Board*, 578 F.2d 1122 (5th Cir. 1978); *Canal Authority v. Callaway*, 489 F.2d 567 (5th Cir. 1974). These factors are applied on a case-by-case basis, and where one or more of the factors is very strongly established, this will ordinarily be seen as compensating for a weaker showing as to another or others. *Knights of the KKK, supra* at 1125.

■ Plaintiffs have established irreparable injury by showing that the ordinance has prohibited the free exercise of their religious beliefs in violation of the First Amendment, as applied to the states through the Fourteenth Amendment. It is well established that the loss of First Amendment freedoms, for even minimal periods of time, constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).

■ The threatened, and indeed actual, injury to the plaintiffs far outweighs whatever damage the injunction might cause the City. Balancing the plaintiffs' fundamental First Amendment rights against the City's interest in preventing the perpetration of frauds upon its citizens, it is clear that the City will not be injured by the granting of the injunction, since it may prosecute the plaintiffs for fraudulent activities if and when these plaintiffs in fact commit a fraud upon the City's inhabitants. To deprive the plaintiffs of those precious rights secured by the First Amendment on the strength of a mere possibility that they might defraud the public unquestionably constitutes an injury of severe proportion.

■ Granting the injunction would not be against the public interest, since the public at large, as well as these particular plaintiffs, has a substantial interest in the vindication of First Amendment freedoms.

The remaining criterion for the granting of temporary injunctive relief is that the plaintiffs must show a substantial likelihood of success on the merits. Plaintiffs have challenged the constitutionality of the ordinance on no less than six independent grounds, any one of which standing alone would be sufficient as a basis for relief.

■ A long line of Supreme Court cases, beginning with *Murdock v. Pennsylvania*, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943), has established that the distribution of literature and the solicitation of funds to support a religious organization are activities protected by the First Amendment. Any ordinance subjecting the exercise of these First Amendment rights to prior governmental approval is inherently suspect and bears a heavy presumption against its constitutional validity. *See, Shuttlesworth v. Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). Although First Amendment freedoms are not absolute and must yield to the compelling interest of the state in protecting the safety and welfare of the public, the state's interest must manifest itself only through narrow, objective, definite and precise standards so that the licensing of protected activities is not left to the unbridled discretion of government officials. *Shuttlesworth, supra.*

Section 11–21 of the ordinance, "Granting of Permit," authorizes the Board to direct the issuance of a permit when it finds that there is "no substantial and competent evidence . . . which . . . would demonstrate that said proposed solicitation would be injurious to the public health, safety and general welfare of the City of West Palm Beach." What constitutes injury to the "public health, safety and general welfare of the City" is nowhere defined by the ordinance. In making his or her decision to grant or deny a permit, each member of the Board must necessarily determine what is injurious to the public welfare based on inevitably subjective criteria. The decision thus involves the "appraisal of facts, the exercise of judgment, and the formation of an opinion" of the sort condemned in *Cantwell v. Connecticut*, 310 U.S. 296, 305, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). Such ill-defined and imprecise standards could allow the denial of a permit, on "public welfare" grounds, to any applicant whose religious beliefs were disapproved by the members of the Board.

■ Further, since the ordinance conditions the exercise of First Amendment rights upon the obtaining of a permit, it operates as a system of prior restraint without the procedural safeguards mandated by *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). In the event a permit is denied by the Board, the applicant may appeal to the City Commission. The ordinance, however, does not provide for judicial review of any kind, let alone the prompt judicial review contemplated by *Freedman*, wherein the official denying the license must bear the burden of proof that the proscribed activity is unprotected.

■ The Court need not at this juncture consider the other arguments asserted by the Plaintiffs. It is enough, for purposes of this motion, that Plaintiffs have shown a substantial likelihood of ultimate success on the merits in that the ordinance vests un-

limited discretion in the licensing authority as to the issuance or denial of a permit and that the ordinance operates as a prior restraint without sufficient safeguards.

Accordingly, it is hereby

ORDERED AND ADJUDGED that the Defendant City of West Palm Beach, its agents, officers, servants, employees and all persons in active concert with them, are preliminarily enjoined and restrained from applying or enforcing, directly or indirectly, the provisions of West Palm Beach, Florida, Code Chapter 11, Article II (1978), against the Plaintiffs Michael Erskine, Louise Geoffory and Chris Westfall, pending final disposition of this cause on the merits.

DONE AND ORDERED in Chambers at Miami, Dade County, Florida this 14th day of May, 1979.