**Jerry P. CHESNUT, Plaintiff,**

v.

**ST. LOUIS COUNTY, MISSOURI, Defendant.**

No. 79–1254–C(3).

United States District Court, E. D. Missouri, E. D.

June 27, 1980.

Irl B. Baris, St. Louis, Mo., Mark W. Bennett, Des Moines, Iowa, for plaintiff.

Dennis C. Affolter, Asst. County Counselor, Clayton, Mo., for defendant.

MEMORANDUM

FILIPPINE, District Judge.

This action poses a challenge to the validity of various provisions of Title VIII Chapter 804 SCLRO 1964, the Peddler and Solicitor Code of St. Louis County (the "Code"). The complaint was originally filed as a class action by Jerry P. Chesnut, a member of The Holy Spirit Association for the Unification of World Christianity (the "Church"). Plaintiff Chesnut moved the Court for a preliminary injunction at the time he filed his complaint. Subsequent to the hearing on plaintiff's motion for a preliminary injunction, the plaintiff dismissed his class action allegations and later moved for leave to amend his complaint to add the Church as a party plaintiff. Plaintiff Chesnut and defendant St. Louis County (the "County") have filed cross-motions for summary judgment, and a motion to intervene as a plaintiff has been filed by Kevin J. Krapfl. All of the above motions are presently pending before the Court.

A review of the structure of the Code is necessary to an understanding of the Court's rulings on these motions. The Code, as amended in 1972 by ordinances number 6201 and 6510, contains twenty-six sections which govern the issuance of peddlers' and solicitors' licenses for St. Louis County. The Code's definition of "peddler" is as follows: "Any individual who shall deal in the selling of goods, wares or merchandise from a stock of merchandise with him, by going about from place to place to sell the same." Section 804.030(2). The Code's definition of "solicitor" is in part as follows:

Any individual: (a) traveling by foot . . . or any type of conveyance from house to house, or place to place; or, (b) positioned on or near street corners, public ways or places of public assembly . . for the purpose of: (i) soliciting property or financial assistance of any kind; or (ii) selling or offering for sale any article, tag, service, emblem, publication or ticket; or (iii) taking or attempting to take orders the sale [sic] of goods . . . or other merchandise for future delivery . . . . . The term "solicitor" shall include a "canvasser" and "salesman" and shall exclude a peddler as that term is herein defined.

Section 804.030(4).

The Code's definitional section also defines the term "Charitable Solicitation Campaign," as follows:

Any course of conduct involving a solicitor as herein defined whose activities in soliciting property or financial assistance of any kind or in selling or offering to sell any article, tag, service, emblem, publication, ticket, subscription or anything of value are made on the representation that such sale or solicitation or the proceeds therefrom are for a charitable, educational, patriotic or philanthropic purpose. The term "charitable solicitation campaign" specifically includes activities that are commonly known as "tag days" and "charitable toll roads."

Section 804.030(5).

Section 804.040 makes it unlawful for a peddler to peddle, and § 804.050 makes it unlawful for a solicitor to solicit, in St. Louis County without having obtained a peddler's or solicitor's license, respectively, from the Division of Licenses of the County Department of Revenue (the "Division"). The information required of an applicant for either type of license is set forth in § 804.110; the information required is the same for both types of license. (Defendant's exhibit "B", introduced at the hearing on the preliminary injunction, exemplifies this fact, as it is labelled "Application for Peddler or Solicitor License.") Each application is to be investigated and recommended for approval or disapproval by the Superintendent of the County Police Department. Section 804.120. The tax imposed on peddlers and solicitors is set forth in § 804.140. Subsection (1) of that section provides, for example, that from a peddler who travels on foot and carries his goods, the County and State of Missouri will each exact a tax of $3.00 for every six month period; subsection (2) provides that the tax upon all solicitors will be $5.00 for a six month period.

Any individual whose activities are covered by the Code is thus classified either as a peddler or as a solicitor; even those individuals engaged in a charitable solicitation campaign are, by definition, solicitors. However, the Code does have additional provisions relating to charitable solicitation campaigns. The key provision is § 804.170, entitled "Charitable Solicitation Permit". The section reads as follows: "The provisions of Sections 804.040 through 804.160 shall not be applicable to any organization conducting a charitable solicitation campaign in St. Louis County, provided the organization shall have obtained a charitable solicitation permit from the Division." As the Court interprets this provision for charitable solicitation permits, it is permissive. The section does not *require* that any organization wishing to conduct a charitable solicitation campaign obtain a charitable solicitation permit ("permit"). The organization's campaign could be carried out through its individual members licensed as solicitors. The effect of the section is that individuals who wish to engage in a charitable solicitation campaign are subject to licensure as solicitors—unless they are soliciting for an organization which has obtained a permit. The advantages and disadvantages of the permit scheme are made clear below.

The charitable solicitation licensing function is entrusted to the seven-member Charitable Solicitations Commission (the "Commission") created by § 804.180. Applications for a permit are to contain the highly detailed information specified in § 804.190 and are to be submitted 60 days in advance of the date solicitation is to begin. The Commission is empowered to make any necessary investigation of an application. Only if satisfied that the charitable solicitation campaign and its organizers meet the following four criteria is the Commission to certify its approval to the Division: 1) that the campaign is "for a bona fide charitable, patriotic or philanthropic purpose"; 2) "that such campaign is prompted solely by a desire to finance the cause in question"; 3) "that the organization conducting the campaign is under the control and supervision

of responsible and reliable persons"; and 4) "that the cost of raising the funds shall be reasonable." Section 804.200(1). The last criterion is made more specific by § 804.200(2), which, loosely speaking, places the ceiling of "reasonableness" of cost at 25% of the gross amount raised or of the profit made on the sale of goods or services.

If the Commission approves an application for a permit, it is also to recommend a period of duration for the permit. Section 804.200(1). The Division, on receipt of the Commission's certificate of approval and a $5.00 fee from the applicant, is to issue the permit. The maximum duration of the original permit is three months, but the permit may be renewed by the Commission for a maximum of three additional three-month periods upon payment of a $3.00 fee for each extension. Section 804.200(3). The permit is to specify the total number of solicitors licensed to participate in the campaign. Section 804.200(1).

All those individuals who are licensed to solicit under the permit are to carry an identification card while soliciting; the cards are furnished by the Division for a charge of $.05 each. Section 804.210. Card holders may advertise the fact that they have a permit but may not represent the permit as an endorsement. Section 804.220.

Section 804.260 sets forth the penalties incurred by peddlers and solicitors who fail to comply with various provisions of the Code. However, certain exemptions from the requirements of the Code are set forth in § 804.240. An exemption is granted to nonprofit churches and fraternal lodges, the earnings of which do not inure to the benefit of private persons, and collections for which either are taken at regular services of the church or lodge or are taken without remuneration by members from other members.

In sum, the effect of the permit scheme may be stated as follows: in exchange for successfully undergoing a rather searching inquiry, a charitable organization is able to obtain, on one permit, permission to solicit for a large number of its members or em-

ployees. The cost of the permit to the organization is only $5.00 for a period of up to three months, with $3.00 three-month extensions possible. Individual members can obtain, with less scrutiny at the threshold level at least, solicitors' licenses to conduct the same campaign, but each solicitor is required to pay $5.00 for a six-month license. In addition, a permit entitles the organization's members to display the words "Charities solicitations permit no. . . ." while soliciting. Thus, the essential advantages of the permit scheme for an organization are its inexpensiveness in comparison to the cost of licensing individual solicitors, and the possibility of advertising the fact that the organization has a permit. The basic disadvantages are the length and detail of the investigation incident to obtaining a permit.

The plaintiff's complaint in this action is directed toward the following sections of the Code: 804.030(5); 804.180; 804.190; 804.200; 804.230; and 804.240. These sections all relate to the charitable solicitation campaign scheme of the Code. Plaintiff attacks the sections on a variety of grounds, including vagueness, violation of the First Amendment free speech, establishment, and free exercise clauses, and violation of plaintiff's right of privacy.

Plaintiff Chesnut, as noted above, has moved the Court to enter a preliminary injunction against the enforcement of the Code. The defendant has moved for summary judgment on the ground that four days before the hearing on plaintiff's motion for the preliminary injunction, plaintiff obtained a peddler's license from the Division pursuant to the Code. The County argues that plaintiff's peddler's license entitles him to conduct the very sort of campaign which he professes to be unable to conduct without a charitable solicitation permit, and that therefore the plaintiff suffers no injury as a result of those provisions which he wishes to challenge. Defendant argues, in short, that plaintiff Chesnut has no standing to bring this action.

■ The Court disagrees with the County's analysis, although not with its result.

Plaintiff's testimony at the hearing established that the plaintiff usually carries candy with him when he goes out to proselytize and solicit funds for the Church, but that he does not always do so. More importantly, the plaintiff testified that he does not give candy or literature to each person who makes a donation. The Court finds, therefore, that plaintiff's conduct does not qualify him as a "peddler" under § 804.030(2) of the Code because the plaintiff does not sell goods; he does not give candy or literature to each person who donates funds.

■ However, it appears that the plaintiff is a "solicitor" pursuant to § 804.030(4). The plaintiff, according to his complaint and his testimony at the hearing, comes within the terms of that subsection in that he "travel[s] by foot . . . from house to house, or place to place" and is "positioned on or near street corners, public ways or places of public assembly or congregation . . . for the purpose of: (1) soliciting . . . financial assistance . . . ." for the Church. No reason appears why the plaintiff could not obtain, by the same application procedure by which he obtained a peddler's license, a solicitor's license. In fact, were the Code's permit scheme declared unconstitutional, plaintiff Chesnut would *still* be required, on this Court's interpretation of § 804.170, to obtain a solicitor's license.

Plaintiff's alleged harm is that he (and other members of the Church) "have no adequate means of access to the residents of this county for the purpose of religious proselytizing and solicitation of funds, without jeopardizing and exposing themselves to imminent and immediate arrest and prosecution or threat of arrest and prosecution . . . ." and that he is therefore deprived of his First Amendment rights. Complaint, paragraphs 8, 10 and 13. However, for the reasons stated above, it appears to the Court that individual Church members do have an adequate means of access to county residents, through individual solicitor's licenses. Plaintiff has made no claims of constitutional infirmity in the licensing procedure for solicitors.

Under the circumstances, the Court concludes that plaintiff Chesnut has no standing to bring this action. The allegations of the complaint, considered together with the Code, which is incorporated into the complaint, do not "establish that, in fact, the asserted injury was the consequence of the defendant's actions [in enacting and enforcing the challenged sections of the Code], or that prospective relief will remove the harm," and hence the plaintiff has failed "to meet the minimum requirement of Art. III." *Warth v. Seldin*, 422 U.S. 490, 505, 95 S.Ct. 2197, 2208, 45 L.Ed.2d 343 (1975). From all that has been *alleged*, plaintiff Chesnut's exposure to arrest is a result of his failure to obtain a solicitor's license.*

■ Plaintiff *has* indicated, in his affidavit accompanying the complaint, that the Church has been denied a permit. However, there is no allegation that plaintiff Chesnut was in the St. Louis area at the time such denial occurred or that he would have been among those licensed to solicit had the Church been granted a permit. More fundamentally, such denial did not foreclose plaintiff's access to County residents. Moreover, because the plaintiff would still be subject to licensure as a solicitor were the permit scheme declared unconstitutional, he has failed to show "an injury to himself [resulting from the challenged Code sections] that is likely to be redressed by a favorable decision," *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976).

The Court has not overlooked the plaintiff's testimony, at the hearing on the preliminary injunction, that four or five days before the hearing he was warned by two County policemen that he would be arrested if he continued his door-to-door solicitation without a charitable solicitation permit. The plaintiff testified further that he did not know whether the peddler's license he obtained subsequent to this incident covered his door-to-door solicitation. Thus, it may fairly be inferred that since he received this warning from the County police,

plaintiff has restricted his solicitation activity for fear of arrest.

■ This fact may show an injury to the plaintiff. However, it is not an injury that may be traced to the challenged sections of the Code. "The party who invokes [judicial] power must be able to show . . that he has sustained or is immediately in danger of sustaining some direct injury as the result of [a statute's] enforcement." *Linda R.S. v. Richard D.*, 410 U.S. 614, 618, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973), quoting *Massachusetts v. Mellon*, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923). In *Linda R.S. v. Richard D.*, the Court found that the plaintiff had no standing to allege a violation of equal protection in the enforcement of a criminal child support law because the connection between the plaintiff's injury (failure to receive child support payments) and the defendants' policies of enforcement was found to be too speculative. See also *Simon v. Eastern Ky. Welfare Rights Org., supra*, in which the Court found the plaintiffs to be without standing in light of "the 'case or controversy' limitation of Art. III [which] . . . requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." 426 U.S. at 41–42, 96 S.Ct. at 1926. *Cf. Duke Power Co. v. Carolina Env. Study Group*, 438 U.S. 59, 78, 98 S.Ct. 2620, 2633, 57 L.Ed.2d 595 (1978), in which the Court rejected the argument that "in addition to proof of injury and of a causal link between such injury and the challenged conduct, appellees must demonstrate a connection between the injuries they claim and the constitutional rights being asserted." See L. Tribe, American Constitutional Law § 3–21 (1978).

In the instant case, the connection between plaintiff's injury and the challenged Code sections is not even a matter for speculation; it is nonexistent. If two County policemen told the plaintiff that he could not solicit without a permit, they were not

---

* The allegations of paragraph 8 of the complaint are ambiguous as to which of the "various requirements" of the Code plaintiff alleges he must meet.

**120**

enforcing the Code, as this Court interprets it. Accordingly, this incident does not give plaintiff standing to challenge the permit scheme of the Code.

In sum, the plaintiff has no standing to bring this action, and this action is therefore not a "case or controversy" within the grant of jurisdiction contained in Art. III. *Simon v. Eastern Ky. Welfare Rights Org., supra; Warth v. Seldin, supra.*

Because the Court has no jurisdiction over plaintiff Chesnut's action, the Court will deny the motion to add the Church as a party. While the Church *may* be the proper party to challenge some or all of the provisions attacked by plaintiff Chesnut (this Court intimates no view on that question), any cause of action which the Church might have would obviously constitute an entirely new lawsuit. Moreover, the type of injury suffered by the Church as a result of the County's denial of its application for a permit is different in kind from that alleged to have been suffered by plaintiff Chesnut. Under the circumstances, the Court concludes that to allow the Church to enter this action at this juncture would be to allow one lawsuit to be substituted for another.

Finally, the Court will deny the motion of Kevin J. Krapfl to intervene in this action. As an individual Church member, his complaint is subject to the same jurisdictional defects as is plaintiff Chesnut's.