Jerry P. CHESNUT, Appellant,

v.

ST. LOUIS COUNTY, MISSOURI, Appellee.

No. 80–1668.

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1981.

Decided Aug. 13, 1981.

Rehearing Denied Sept. 22, 1981.

Mark W. Bennett, argued, Allen, Babich & Bennett, Des Moines, Iowa, and Irl B. Baris, St. Louis, Mo., for plaintiff-appellee, Jerry P. Chesnut.

Thomas W. Wehrle, County Counselor, and Dennis C. Affolter, Asst. County Counselor, argued, Clayton, Mo., for defendant-appellee, St. Louis County.

Before HEANEY, STEPHENSON and McMILLIAN, Circuit Judges.

STEPHENSON, Circuit Judge.

Plaintiff-appellant, Jerry P. Chesnut, is an individual member of the Holy Spirit Association for the Unification of World Christianity (Unification Church). Chesnut brought suit challenging the validity of various provisions of the St. Louis County Peddler and Solicitor Code (Code). Chesnut filed motions for preliminary injunction, leave to amend the complaint to add the Unification Church as a party plaintiff, and summary judgment. Defendant-appellee, St. Louis County, also filed a motion for summary judgment, and another individual member of the Unification Church filed a motion to intervene. The district court[1] held that Chesnut lacked standing and granted St. Louis County's motion for summary judgment. The court also denied all other motions before it and dismissed the case. Chesnut appeals from the district court's actions. We affirm in part, reverse in part, and remand with instructions.

## I. PROCEDURAL BACKGROUND

On October 15, 1979, Chesnut filed a lawsuit pursuant to 42 U.S.C. § 1983, as a class action, to enjoin the enforcement of, and declare unconstitutional, several provisions of the Peddler and Solicitor Code of St. Louis County, Missouri. The challenged provisions created requirements for the is-

1. The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri. The district court's opinion is published at 495 F.Supp. 115 (E.D.Mo.1980).

suance of charitable solicitation permits. Filed with Chesnut's complaint was a motion for preliminary injunction.

A hearing was held before the district court concerning the preliminary injunction on October 26, 1979. At that time Chesnut requested and was granted leave to amend the complaint to add the Unification Church as a party plaintiff. Defendant did not resist the motion. Chesnut was to file the amendment by October 31, 1979. On November 5, 1979, a letter from Chesnut's counsel was filed advising the court the Church would not be added as a party and plaintiff would proceed with the suit as a class action.

On December 28, 1979, Chesnut filed a voluntary dismissal of the class action allegation. On January 8, 1980, the defendant filed its motion for summary judgment, and on January 17 Chesnut filed his cross-motion for summary judgment, as well as a motion to amend the complaint to add the Church as a party. On March 20, 1979, Kevin J. Krapfl, a member of the Unification Church, filed a motion to intervene in Chesnut's lawsuit. The district court order granting defendant's motion for summary judgment and dismissing all of Chesnut's motions, as well as Krapfl's motion to intervene, was issued on June 27, 1980. Chesnut appeals, arguing the district court erred in concluding he lacked standing to attack the constitutionality of the challenged provisions.

## II. FACTS

Chesnut had been engaged in public proselytizing and solicitation of funds on behalf of the Unification Church in the St. Louis area since March 1977. Chesnut had held a St. Louis County peddler's license that had expired in September 1979. After filing this lawsuit, and four or five days prior to the October 26, 1979, hearing on the preliminary injunction, Chesnut testified that he was distributing literature and soliciting funds in St. Louis County when he was stopped by two police officers and threatened with arrest for not having a charitable solicitation permit. He testified that he

had been so threatened on past occasions and was aware of arrests of other members of the Church in St. Louis County for soliciting without a permit. After this occurrence, Chesnut on October 22, 1979, obtained a county peddler's license.

From the testimony of Chesnut at the preliminary hearing and the affidavits accompanying his complaint, it appears that his normal procedure was to hand out literature and/or candy and discuss Church doctrine or activities while soliciting funds on behalf of the Church. Chesnut testified that he did not always give out literature or candy when soliciting, although this was the usual practice.

In Krapfl's memorandum in support of his motion to intervene, he alleges he was arrested for violating the ordinance on March 17, 1980, while peacefully proselytizing and soliciting funds for the Unification Church. The relief sought was substantially similar to that of Chesnut.

The Unification Church is a California non-profit corporation, holding Federal tax-exempt status. It was founded in Seoul, Korea, in 1954 and has established itself throughout the United States and the world. Included in the work of the Unification Church is door-to-door and public place proselytizing and soliciting of funds to support the Church's activities.

## III. ANALYSIS

### A. The St. Louis County Peddler and Solicitor Code

Like the district court, it is our view that an examination of the St. Louis County Peddler and Solicitor Code is necessary to an understanding of this case. The Code, appearing at Title VIII SLCRP 1964, §§ 804.010–804.260, governs the issuance of peddlers' and solicitors' licenses and charitable solicitation permits in St. Louis County.

We cannot improve upon the district court's summary of the Code set out in its opinion, *Chesnut v. St. Louis County*, 495 F.Supp. 115, 116 (E.D.Mo.1980):

The Code, as amended in 1972 by ordinances number 6201 and 6510, contains

twenty-six sections which govern the issuance of peddlers' and solicitors' licenses for St. Louis County. The Code's definition of "peddler" is as follows: "Any individual who shall deal in the selling of goods, wares or merchandise from a stock of merchandise with him, by going about from place to place to sell the same." Section 804.030(2). The Code's definition of "solicitor" is in part as follows:

Any individual: (a) traveling by foot . . . or any type of conveyance from house to house, or place to place; or, (b) positioned on or near street corners, public ways or places of public assembly . . . for the purpose of: (i) soliciting property or financial assistance of any kind; or (ii) selling or offering for sale any article, tag, service, emblem, publication or ticket; or (iii) taking or attempting to take orders the sale [sic] of goods . . . or other merchandise for future delivery . . . . The term "solicitor" shall include a "canvasser" and "salesman" and shall exclude a peddler as that term is herein defined.

Section 804.030(4).

The Code's definitional section also defines the term "Charitable Solicitation Campaign," as follows:

Any course of conduct involving a solicitor as herein defined whose activities in soliciting property or financial assistance of any kind or in selling or offering to sell any article, tag, service, emblem, publication, ticket, subscription or anything of value are made on the representation that such sale or solicitation or the proceeds therefrom are for a charitable, educational, patriotic or philanthropic purpose. The term "charitable solicitation campaign" specifically includes activities that are commonly known as "tag days" and "charitable toll roads."

Section 804.030(5).

Section 804.040 makes it unlawful for a peddler to peddle, and § 804.050 makes it unlawful for a solicitor to solicit, in St. Louis County without having obtained a peddler's or solicitor's license, respective-ly, from the Division of Licenses of the County Department of Revenue (the "Division"). The information required of an applicant for either type of license is set forth in § 804.110; the information required is the same for both types of license. (Defendant's exhibit "B", introduced at the hearing on the preliminary injunction, exemplifies this fact, as it is labelled "Application for Peddler or Solicitor License.") Each application is to be investigated and recommended for approval or disapproval by the Superintendent of the County Police Department. Section 804.120. The tax imposed on peddlers and solicitors is set forth in § 804.-140. Subsection (1) of that section provides, for example, that from a peddler who travels on foot and carries his goods, the County and State of Missouri will each exact a tax of $3.00 for every six month period; subsection (2) provides that the tax upon all solicitors will be $5.00 for a six month period.

Section 804.170, however, establishes a means to avoid the above provisions:

*Charitable Solicitation Permit.* The provisions of Sections 804.040 through 804.160 shall not be applicable to any organization conducting a charitable solicitation campaign in St. Louis County, provided the organization shall have obtained a charitable solicitation permit from the Division.

A Charitable Solicitation Committee having "the power to recommend the issuance and revocation of permits" is established by section 804.180. An application for such a permit must satisfy the several detailed requirements of section 804.190. Under section 804.200, a permit *shall* be issued by the Division after approval of the application by the Commission. A fee of five dollars is charged for a permit which may be valid for up to three months. Three additional three month extensions are available for three dollars per each extension.

All individuals soliciting pursuant to a charitable solicitation permit are required to carry an identification card while soliciting, such cards being furnished for a fee of

five cents each. Section 804.210. The fact that a cardholder has a permit may be advertised in a prescribed manner, but the holder may not advertise the permit as an endorsement. The Commission may revoke the permit for certain reasons pursuant to section 804.230.

*B. Standing*

It must be stressed that from the filing of the complaint through this appeal Chesnut has attacked the sections of the Code dealing with charitable solicitations, and not those dealing solely with individual peddler or solicitor licenses. Chesnut's complaint and appellate brief attack sections 804.030(5); .180; .190; .200; .230 and .240. Only section 804.240, alleged to be unconstitutional on its face, has application to the Code as a whole.

The major issue in resolving the standing question is whether the charitable solicitation permit scheme is permissive, as held by the district court, or mandatory, as argued by Chesnut on appeal.

Under the district court interpretation, and that advanced by appellee here, a charitable organization designed to conduct charitable solicitations has an option of either attempting to satisfy the rigorous requirements of the charitable solicitation sections, or alternately by licensing its individual members as solicitors. Under this interpretation, Chesnut, who has a peddler's license and clearly qualifies for a solicitor's license, can engage in the exact same activities with an individual solicitor license as he could with a charitable solicitation permit. Following this view, one who has obtained an individual solicitor's license cannot be lawfully arrested for the failure to have a

charitable solicitation permit. Under its construction of the Code, then, the district court was correct in concluding Chesnut had no standing to challenge the unconstitutionality of the charitable solicitation sections, for it was not necessary for Chesnut to obtain this permit in order to engage in his protected activity. Again, Chesnut is not challenging the individual peddler and solicitor licensing provisions, or, with the exception of section 804.240, the overall effect of the Code upon his rights.

Under Chesnut's interpretation, the requirement of a charitable solicitation permit is mandatory. He argues that one is either a peddler, a solicitor, or engaged in charitable solicitation. One who is engaged in charitable solicitation (as opposed to solicitation with a business or commercial purpose) must have a charitable solicitation permit, and would be subject to arrest if he or she merely had a solicitor's license, according to this view. Chesnut argues that his activity is charitable solicitation, and therefore whether he has a peddler and/or solicitor license is immaterial, he is nevertheless under threat of arrest for his failure to have a charitable solicitation permit.

■ Chesnut's arguments in support of his interpretation of the Code are not without merit.[2] However, for several reasons we find ourselves in general agreement with the district court's interpretation that the charitable solicitation permit scheme is permissive. For example, section 804.170 provides that the individual licensing provisions shall not be applicable to an organization engaged in charitable solicitations provided it obtains a charitable solicitation permit. The corollary of this is that if a charitable solicitation permit is not obtained, the

---

**2.** Chesnut argues that the plain meaning of the Code establishes that individuals who engage in charitable solicitation cannot also be deemed mere solicitors. It is our view that at best the Code is unclear in this regard. Chesnut also argues the district court interpretation is contrary to that which the defendant itself placed upon the Code prior to the district court opinion. Even if this is true, this is insufficient reason for striking down the district court's interpretation as erroneous.

Chesnut argues that the purpose behind the Code requires us to reach his conclusion that "solicitor" and "one engaged in charitable solicitations" are mutually exclusive. Chesnut argues that it is inconceivable that defendant would adopt detailed provisions and requirements for the obtaining of a charitable solicitation permit, and then allow wholesale circumvention of the provisions by organizations who license their solicitors as individual solicitors under those Code provisions. This contention is answered in the text following this footnote.

provisions and requirements of the individual peddler and solicitor sections will apply.

■ Additionally, there are no penalty provisions in the sections of the Code dealing with charitable solicitation permits, except to the extent that certain conduct may result in the revocation of the permit. Individual peddling or soliciting without a license is prohibited, with criminal penalties provided for those engaging in this conduct. Thus it appears the intent of the Code was to generally require all peddlers and solicitors to obtain licenses, with an exception for those who satisfied the requirements of a charitable solicitation permit and obtained such a permit. As stated by the district court:

> In sum, the effect of the permit scheme may be stated as follows: in exchange for successfully undergoing a rather searching inquiry, a charitable organization is able to obtain, on one permit, permission to solicit for a large number of its members or employees. The cost of the permit to the organization is only $5.00 for a period of up to three months, with $3.00 three-month extensions possible. Individual members can obtain, with less scrutiny at the threshold level at least, solicitors' licenses to conduct the same campaign, but each solicitor is required to pay $5.00 for a six-month license. In addition, a permit entitles the organization's members to display the words "Charities solicitation permit no. . . ." while soliciting. Thus, the essential advantages of the permit scheme for an organization are its inexpensiveness in comparison to the cost of licensing individual solicitors, and the possibility of

advertising the fact that the organization has a permit. The basic disadvantages are the length and detail of the investigation incident to obtaining a permit.

*Chesnut v. St. Louis County, supra,* 495 F.Supp. at 117–18.

In addition to raising his personal interest in this lawsuit, it may also be inferred that Chesnut, as a member practicing the tenets of his faith, raises the interest of the Unification Church in his attack on the charitable solicitation provisions. This court allowed such a claim *sub silentio* in *Walker v. Wegner,* 624 F.2d 60 (8th Cir. 1980).[3] This does not solve Chesnut's standing problem in his attack on the charitable solicitation sections of the Code, however. The Church's charitable solicitation campaign could still be carried out through individual church members licensed as solicitors. Therefore the standing problem remains.[4]

■ We conclude that the district court did not err in holding that Chesnut does not have standing under the circumstances of this case to bring his allegations that the sections of the Code dealing solely with the charitable solicitation permit provisions are unconstitutional.

■ Contrary to the district court's holding, however, it is our view that Chesnut does have standing to raise one of the allegations in his complaint. At paragraphs 12(h) and (i) of his complaint, Chesnut argues that section 804.240 of the Code is unconstitutional because it violates the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. Section 804.240 exempts churches and fraternal lodges, which satisfy certain require-

---

**3.** *See also, e. g., Remmers v. Brewer,* 494 F.2d 1277 (8th Cir. 1974), *aff'g,* 361 F.Supp. 537 (S.D.Iowa 1973); *Erskine v. West Palm Beach,* 473 F.Supp. 48 (S.D.Fla.1979); *Weissman v. City of Alamogordo,* 472 F.Supp. 425 (D.N.M. 1979); *Hall v. McNamara,* 456 F.Supp. 245 (N.D.Cal.1978); *Love v. Mayor, City of Cheyenne,* 448 F.Supp. 128 (D.Wyo.1978), for cases in which the court allowed cases brought individually by members of a church to raise the church's interest.

**4.** If the Unification Church intended to carry out its campaign, with a large number of individual solicitors, and it is unable to secure a charitable solicitation permit, it is clearly faced with a substantial monetary constraint on its conducting the charitable solicitation campaign. The large fee resulting from each individual procuring a solicitor license to carry out the Church's protected activity may raise constitutional problems. However, the manner in which the individual licensing scheme may burden the Church has not been raised by appellant and therefore is not before us.

ments from *all provisions of the Code.*[5] Thus Chesnut has standing to make his allegation that some churches and religious groups are exempted from being forced to obtain *either* a charitable solicitation permit or individual solicitor licenses for all its members, while the Unification Church and Chesnut as a member engaging in its protected activities must obtain one or the other in order to engage in charitable solicitation.[6]

### C. Motion to Amend Complaint

■ While it is our view that Chesnut in effect may raise the Church's interest in the section 804.240 claim, *see Walker v. Wegner, supra,* we hold the district court, in any event, should have allowed Chesnut's motion for leave to amend the complaint to add the Unification Church as a party plaintiff. This request was made in January 1980, simultaneously with Chesnut's cross-motion for summary judgment. At this time granting the motion would not have prejudiced defendant. The defendant had supported some of its pleadings and motions prior to that point in the case assuming that the Church was a party. Furthermore, at no time did defendant resist the motion for leave to amend.

■ Amendments should be allowed with liberality, *e. g., Standard Title Insurance Co. v. Roberts,* 349 F.2d 613, 622 (8th Cir. 1965), and when justice so requires, even after defendant has served the moving party with a motion for summary judgment. *Verhein v. South Bend Lathe, Inc.,* 598 F.2d 1061, 1063 (7th Cir. 1979).

■ Although plaintiff should have amended the complaint to add the Church as a party plaintiff when leave was granted in October 1979, the delay is not controlling; prejudice to the defendant is still the touchstone. *Cornell & Co. v. Occupational Safety & Health Review Commission,* 573 F.2d 820, 823 (3d Cir. 1978). No unfair prejudice from the delay is apparent here. As stated by the court in *Middle Atlantic Utilities Co. v. S. M. W. Development Corp.,* 392 F.2d 380, 384 (2d Cir. 1968):

> The three-year delay from the filing of the initial complaint is an inadequate basis for denying a motion to amend. It may be a factor to be considered but unless the motion either was made in bad faith or will prejudice defendant, delay by itself is not enough to deny the requisite relief.

### IV. CONCLUSION

It is our view that this case must be remanded to the district court for consideration of the merits of Chesnut's claim concerning section 804.240. On remand Chesnut should be allowed to amend the pleadings to add the Unification Church as a party plaintiff.[7] We express no views as to the merits of the constitutional challenge.[8]

---

5. Section 804.240 provides:

   *Exemptions.* The provisions of this Chapter shall not apply: (a) to any church or fraternal lodge, not operated for pecuniary profit, where no part of the net earnings of which inures to the benefit of any person, private shareholder or individual, and where the solicitation of such organization shall be conducted by members among members thereof, voluntarily and without remuneration for such activities; or, (b) where such solicitation is in the form of collections or contributions at the regular exercises or services of any church or lodge.

6. In challenging section 804.240 as unconstitutional on its face, the fact that Chesnut has not applied for a solicitor's license or a charitable solicitation permit is not a bar; the applicability of one or the other to him and members of the Unification Church is clear. *See, e. g.,*

*Shuttlesworth v. Birmingham,* 394 U.S. 147, 151, 89 S.Ct. 935, 938, 22 L.Ed.2d 162 (1969); *Freedman v. Maryland,* 380 U.S. 51, 56, 85 S.Ct. 734, 737, 13 L.Ed.2d 649 (1965); *Natco Theatres, Inc. v. Ratner,* 463 F.Supp. 1124, 1126 (S.D.N.Y.1979); *ISKCON, Inc. v. Engelhardt,* 425 F.Supp. 176, 179 (W.D.Mo.1977).

7. It is our view that the district court did not abuse its discretion in denying the motion of Kevin Krapfl to intervene. We express no view as to whether the district court should reconsider this motion on remand. It is discretionary with that court.

8. It should be noted that the constitutionality of the other challenged sections of the Code concerning charitable solicitations is not the central consideration to the challenge to section 804.240. Nor is the constitutionality of requir-

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

ing the Church in the alternative to license each member individually with a solicitor's permit the focal point at this stage of the proceedings. Instead, the present inquiry is whether the defendant can constitutionally require some religious organizations to be subject to the provisions of this Code as a whole, while others are completely exempted from its provisions.