# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1774

_____

| | |
|---|---|
| Karla Kaye Kuehl, | * |
| | * |
| Plaintiff - Appellee, | * |
| | * |
| v. | * |
| | * Appeal from the United States |
| Stephen P. Burtis; Terry Satterlee; | * District Court for the |
| | * District of South Dakota. |
| Defendants- Appellants | * |
| | * |
| Other John Doe Defendants; | * |
| | * |
| Defendant | * |
| | * |
| City of Sioux Falls; Ezekial | * |
| James  McBeth | * |
| | * |
| Defendants - Appellants. | * |

_____

Submitted: November 17, 1998

Filed: March 29, 1999

_____

Before LOKEN, JOHN R. GIBSON, and MORRIS SHEPPARD ARNOLD, Circuit
Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Officer Stephen P. Burtis appeals the district court's[1] denial of his motion for summary judgment on the basis of qualified immunity. Burtis arrested Karla Kaye Kuehl at the Metro Boutique in Sioux Falls, South Dakota. Kuehl owns and manages the Boutique and was arrested by Burtis after an altercation in the store with Ezekial James McBeth. Burtis arrested Kuehl for simple assault, and Kuehl later sued Burtis under 42 U.S.C. § 1983 for arresting her without probable cause. We affirm the judgment of the district court.

## I.

As we review a motion for summary judgment, we view the evidence in the light most favorable to Kuehl, the non-moving party. Resolution Trust Corp. v. Armbruster, 52 F.3d 748, 750 (8th Cir. 1995). On May 4, 1996, McBeth entered the Metro Boutique. While in the store, McBeth, who is an African-American, believed that Kuehl was following him and watching him too closely because of his race. McBeth approached Kuehl, pushed her roughly, stated that he was not a thief, and called Kuehl a "prejudice bitch" and a "mother fucker." McBeth's behavior and size[2] frightened Kuehl; when she began to retreat from the encounter, McBeth followed her. Kuehl asked McBeth to leave the store, but he refused. She then tried to reach a telephone in order to call the police, but McBeth blocked her way. McBeth remained three to four inches from Kuehl, and Kuehl tried to push him out of the way. In doing so, she inadvertently struck McBeth's face with her hand. In return, McBeth struck Kuehl with a closed fist; Kuehl flew some eight feet through the air, lost her glasses and earrings, and suffered marked facial bruising. When Kuehl was still on the floor, Walid Lakdhar, one of her employees, stood nearby and feared that McBeth would attack Kuehl again.

---

[1]The Honorable John B. Jones, Senior United States District Judge for the District of South Dakota.

[2] McBeth is 6'2" to 6'3" in height and weighs 220 pounds, while Kuehl is 5'9" tall and weighs 160 pounds.

As McBeth approached Kuehl, Lakdhar stepped in front of him.  McBeth and one of his friends threw Lakdhar against a wall then onto the floor.  Another of Kuehl's employees, meanwhile, contacted mall security.  Security guards restrained McBeth, removed him to the outside of the store, and called the police.

Burtis was dispatched to the scene along with two or three other members of the Sioux Falls Police Department.  He interviewed McBeth, McBeth's brother and two friends, an employee of Kuehl's named Doris Gunsolus, and two shoppers in the store.  All of them stated that Kuehl struck McBeth on the face, and Burtis observed some "very slight bruising" on McBeth's face.  Gunsolus tried to retract her statement that Kuehl had slapped McBeth, but Burtis ignored this retraction and omitted it from his police report.  Meanwhile, Burtis spoke to Kuehl for only about twenty seconds.  Kuehl explained to Burtis that McBeth had hit her, that she had feared for her safety, and that she pushed him out of the way so that she could reach a telephone and call the police.  Despite the pronounced bruising on Kuehl's face, Burtis refused to speak further with her, and he omitted Kuehl's version of events from his police report.  Further, Lakdhar--the only witness who saw the entire altercation between Kuehl and McBeth--attempted to explain to Burtis what had transpired between Kuehl and McBeth, but Burtis indicated that he was not interested in what Lakdhar had to say, declined to interview Lakdhar, and made no mention of Lakdhar's account in the police report.  Throughout his investigation, Burtis ignored the circumstances that would have explained why Kuehl struck McBeth or that would have shown that McBeth's injuries occurred inadvertently when Kuehl tried to push him away from her.

Having once more told Kuehl that he would not listen to her, and that, "I've made up my mind," Burtis arrested her for simple assault.  In relevant part, South Dakota law defines simple assault as: "attempt[ing] to cause bodily injury to another . . . [with] the actual ability to cause the injury" as well as "intentionally caus[ing] bodily injury to another which does not result in serious bodily injury."  S.D. Codified Laws § 22-18-1 (1988 Rev.).  Burtis took Kuehl to the Minnehaha County Jail, where

she was detained for two or three hours until her husband posted bail. State prosecutors eventually reduced the charge to disorderly conduct. When McBeth failed to appear at Kuehl's trial and after Gunsolus informed the prosecutor that Burtis's police report was inaccurate, the charges against Kuehl were dropped.

This lawsuit followed. Kuehl sued Burtis, Sioux Falls Police Chief Terry Satterlee, the City of Sioux Falls, and other unnamed officers under 42 U.S.C. § 1983, alleging that Burtis arrested her without probable cause.[3] The officers and the City moved for summary judgment and argued that Burtis was shielded from liability by virtue of qualified immunity. The district court denied the motion, and the officers and the City appealed.[4]

## II.

Kuehl challenges our jurisdiction to review the district court's order. We reject this challenge, but we must first establish our jurisdiction to hear the case. When a district court's denial of a claim of qualified immunity turns upon an issue of law, it is an appealable "final decision." See Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). By contrast, a rejection of a qualified immunity defense is not appealable when the district court merely determines that the record presents a genuine issue of fact for trial. See Johnson v. Jones, 515 U.S. 304, 319-20 (1995). In this case, we must determine whether, considering the facts in the light most favorable to Kuehl, Burtis violated clearly established law. Our inquiry is a quintessentially legal one, and we accordingly have jurisdiction to consider the defendants' appeal. See Waddell v. Forney, 108 F.3d 889, 890 (8th Cir. 1997) ("While we cannot review the district court's determination

---

[3]Kuehl also sued McBeth for assault and battery, but McBeth is not a party to this appeal.

[4]Although Satterlee and the City of Sioux Falls appeal the judgment below, only Burtis's conduct is relevant to this appeal.

that material issues of fact remain for trial . . . we can consider the legal question whether, in view of the facts that the district court deemed sufficiently supported for summary judgment purposes, the individual defendants' conduct was objectively reasonable given their knowledge and the clearly established law."). Appellee's motion to dismiss for lack of jurisdiction is therefore denied.

## III.

In determining whether the district court should have granted summary judgment on the basis of qualified immunity, we must consider whether Kuehl has alleged a violation of a clearly-established constitutional right and whether a reasonable officer in Burtis's position would have known that his actions violated that right. Merritt v. Reed, 120 F.3d 124, 125-26 (8th Cir. 1997). The Fourth Amendment right of citizens not to be arrested without probable cause is indeed clearly established. See Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir.), cert. denied, ___ U.S. ___, 117 S. Ct. 518 (1996). Nevertheless, law enforcement officers are entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause to do so-- provided that the mistake is objectively reasonable. Hunter v. Bryant, 502 U.S. 224, 228-29 (1991). Stated otherwise, "The issue for immunity purposes is not probable cause in fact but arguable probable cause." Habiger, 80 F.3d at 295 (citation omitted).

Probable cause exists when the totality of circumstances demonstrates that a prudent person would believe that the arrestee has committed or was committing a crime. United States v. Washington, 109 F.3d 459, 465 (8th Cir. 1997). We must give law enforcement officers "substantial latitude in interpreting and drawing inferences from factual circumstances," id., but such latitude is not without limits. First, because the totality of circumstances determines the existence of probable cause, evidence that tends to negate the possibility that a suspect has committed a crime is relevant to whether the officer has probable cause. An officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence

-5-

(standing by itself) suggests that probable cause exists.  See Bigford v. Taylor, 834 F.2d 1213, 1218 (5th Cir.), cert. denied, 488 U.S. 822 (1988), 488 U.S. 851 (1988). In this sense, the Fourth Amendment requires that we analyze the weight of all the evidence--not merely the sufficiency of the incriminating evidence--in determining whether Burtis had probable cause to arrest Kuehl for simple assault.  For example, an officer may make an arrest if a credible eyewitness claims to have seen the suspect commit the crime, see United States v. Easter, 552 F.2d 230, 233-34 (8th Cir.), cert. denied, 434 U.S. 844 (1977), but the officer may not arrest the suspect if, in addition, the officer is aware of DNA evidence and a videotaped account of the crime that conclusively establish the suspect's innocence.  See, e.g., Baptiste v. J.C. Penney Co., 147 F.3d 1252, 1257 (10th Cir. 1998) (no probable cause to arrest plaintiff for shoplifting despite security guards' informing police that plaintiff stole merchandise, where officers viewed videotape rebutting guards' account and where plaintiff explained her actions to officers and produced receipts for the merchandise in question).

Second and relatedly, law enforcement officers have a duty to conduct a reasonably thorough investigation prior to arresting a suspect, at least in the absence of exigent circumstances and so long as "law enforcement would not [be] unduly hampered . . . if the agents . . . wait[] to obtain more facts before seeking to arrest." See United States v. Woolbright, 831 F.2d 1390, 1394 (8th Cir. 1987); United States v. Everroad, 704 F.2d 403, 407 (8th Cir. 1983); see also 2 Wayne R. LaFave, Search and Seizure:  A Treatise on the Fourth Amendment § 3.2(d), at 47-48 (3d ed. 1996).  An officer need not conduct a "mini-trial" before making an arrest, Brodnicki v. City of Omaha, 75 F.3d 1261, 1264 (8th Cir.), cert. denied, ___ U.S. ___, 117 S. Ct. 179 (1996); Morrison v. United States, 491 F.2d 344, 346 (8th Cir. 1974), but probable cause does not exist when a "minimal further investigation" would have exonerated the suspect.  See Bigford, 834 F.2d at 1219; BeVier v. Hucal, 806 F.2d 123, 128 (7th Cir. 1986) (a police officer "may not close her or his eyes to facts that would help clarify the circumstances of an arrest"); Romero v. Fay, 45 F.3d 1472, 1476-77 and n.2 (10th

Cir. 1995) (police need not interview alleged alibi witnesses but must "reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention"); Sevigny v. Dicksey, 846 F.2d 953, 956-58 (4th Cir. 1988) (no probable cause where officer unreasonably failed to interview witnesses at scene of automobile accident who would have corroborated plaintiff's version of story); Baptiste, 147 F.3d at 1259 (officers may weigh the credibility of witnesses in making a probable cause determination, but they may not ignore available and undisputed facts). Cf. Brodnicki, 75 F.3d at 1264 (no duty to investigate suspect's proffered alibi prior to arrest); Criss v. City of Kent, 867 F.2d 259, 263 (6th Cir. 1988) (suspect's plausible explanation of events held not to require officer "to forego arrest pending further investigation if the facts as initially discovered provide probable cause").

Under these standards, we cannot conclude that Burtis is entitled to qualified immunity. First, Burtis ignored plainly exculpatory evidence that negated the intent required for simple assault. Kuehl explained to Burtis that she pushed McBeth out of the way so that she could telephone the police, and Burtis observed the sizeable bruise over her left eye. Burtis also knew that Kuehl had asked McBeth to leave the store, and he was told that McBeth hit Kuehl with considerable force. He also ignored Gunsolus's efforts to retract her statement that Kuehl had slapped McBeth, and his report made no mention of this retraction. Evidence known to Burtis therefore suggested that Kuehl neither "attempt[ed] to cause bodily injury" nor "intentionally caus[ed] bodily injury." See S.D. Codified Laws § 22-18-1. Second, Burtis refused to interview Lakdhar despite Lakdhar's having witnessed the entire altercation between Kuehl and McBeth. Lakdhar's account would have further exonerated Kuehl and negated probable cause. Third, a more thorough interview of Kuehl and Lakdhar would not have unduly hampered the process of law enforcement. Burtis was accompanied by at least two other Sioux Falls police officers, and the record presents no indication that exigent circumstances precluded a more thorough investigation by Burtis and his colleagues.

Substantial eyewitness testimony may have indicated that Kuehl assaulted McBeth, but this evidence neither relieved Burtis of the duty to conduct a reasonable investigation nor permitted him to ignore exculpatory evidence within his knowledge. The judgment of the district court is affirmed.

MORRIS SHEPPARD ARNOLD, Circuit Judge, dissents.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.