

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-22-2008

# Andros v. Gross

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2259

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Andros v. Gross" (2008). *2008 Decisions.* Paper 509.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/509

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2259
_____

JAMES L. ANDROS, III, individually and as Father and Natural Guardian on behalf of
Meghan Elizabeth Andros and Elizabeth Andros, minors,

Appellant

v.

M.D. ELLIOT M. GROSS; BRUCE K. DESHIELDS, SGT.; ELADIO ORTIZ, LT.;
JEFFREY S. BLITZ, ESQUIRE; MURRAY TALASNIK, ESQUIRE; M.D. HYDOW
PARK; BARBARA FENTON; COUNTY OF ATLANTIC; STATE OF NEW JERSEY;
JOHN DOE, INVESTIGATORS 1-50, individually, jointly, severally and in the
alternative; CHRISTOPHER WELLMAN, CPT.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 03-cv-01775)
District Judge: Honorable Jerome B. Simandle
_____

Submitted Under Third Circuit L.A.R. 34.1(a),
September 11, 2008

Before: SLOVITER, FUENTES, and ALDISERT, Circuit Judges.

(Opinion Filed: September 22, 2008)
_____

OPINION OF THE COURT
_____

-1-

FUENTES, Circuit Judge:

In April 2001, Appellant James Andros ("Andros"), a former Atlantic County police officer, was arrested by officers from the Atlantic County Prosecutor's Office for murdering his wife, Ellen Andros. He was indicted on that charge by grand jury in June 2001, and lost both his job and custody of his two daughters. In late 2002, a follow-up medical exam revealed that Ellen Andros had not died from asphyxiation, as the county's medical examiner had originally concluded, but rather from a spontaneously dissecting coronary artery, an extremely rare form of heart attack. The charge against Andros was immediately dismissed.

In April 2003, Andros filed suit against employees of the Atlantic County Medical Examiner's Office, along with county prosecutors and police officers and the State of New Jersey, asserting a number of federal and state law claims related to his allegedly illegitimate arrest. Andros now challenges the District Court's award of summary judgment in favor of certain prosecutor and police officer defendants—attorneys Jeffrey Blitz and Murray Talasnik, Sergeant Bruce DeShields, and Lieutenant Eladio Ortiz—and the dismissal of his claims for unconstitutional interference with familial relations. For the reasons that follow, we will affirm the District Court's rulings.

**I.**

The District Court held that the prosecutors, Talasnik and Blitz, were acting in a prosecutorial role in deciding to charge Andros with murder and thus had absolute

-2-

immunity to any charges related to their conduct at that point. Secondly, the Court found that the appellees had probable cause to arrest Andros and thus were entitled to qualified immunity from most of the federal claims. Finally, the Court dismissed without prejudice the counts relating to alleged unconstitutional interference with family relations for failure to plead those claims with sufficient specificity. On a motion for partial reconsideration of the summary judgment order, the District Court extended its qualified immunity ruling to dismiss a number of the state law claims against appellees.

We have plenary review over the District Court's award of summary judgment. Johnson v. Knorr, 477 F.3d 75, 81 (3d Cir. 2007). We construe all disputed facts in favor of Andros, the non-moving party, and will affirm the district court's grant of summary judgment only if there is "'no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law.'" Kopec v. Tate, 361 F.3d 772, 775 (3d Cir. 2004) (quoting Fed. R. Civ. P. 56(c)). We also have plenary review of the dismissal of the familial interference claims. Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 318 (3d Cir. 2008).

## II.

Because we write exclusively for the parties, we discuss only the facts necessary for our analysis below. The primary basis for Andros's claims was his charge that the defendants investigated and indicted him for his wife's murder despite their knowledge that he was at a local bar, the Beach Bar and Grill ("the Beach Bar"), twenty minutes from

his home, at the time of Ellen's death.

## A.

Prosecutors Talasnik and Blitz are entitled to absolute immunity from Andros's claims to the extent they rest on the prosecutors' decision to charge Andros with murder. A prosecutor has absolute immunity for conduct "'intimately associated with the judicial phase of the criminal process,'" as part of his or her role as an advocate, but not for investigative acts. Buckley v. Fitzsimmons, 509 U.S. 259, 270 (1993) (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). The Supreme Court has expressly held that a prosecutor's decision to initiate a prosecution is the action of an advocate participating in the judicial process. Imbler, 424 U.S. at 431. Therefore, in that role a prosecutor has absolute immunity from suit under § 1983. Id. (extending absolute immunity to prosecutor who prosecuted individual despite presence of allegedly exonerating evidence); see also Kulwicki v. Dawson, 969 F.2d 1454, 1464 (3d Cir. 1992) (citing Imbler). Although the Supreme Court has stated that "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested," we hold below that probable cause existed to arrest Andros, making that consideration irrelevant to our analysis. Buckley, 509 U.S. at 274.

Similarly, any misconduct by Talasnik or DeShields in their presentation to the grand jury falls within the protection of absolute immunity. As to Talasnik, the Third Circuit has stated that "soliciting false testimony from witnesses in grand jury proceedings

-4-

and probable cause hearings is absolutely protected." <u>Kulwicki v. Dawson</u>, 969 F.2d 1454, 1465 (3d Cir. 1992). With respect to DeShields, he is subject to absolute immunity from civil suit as a witness. <u>See</u> <u>id.</u> at 1467 n.16 (clarifying that witness immunity extends to investigators testifying in a grand jury proceeding); <u>see also</u> <u>Williams v. Hepting</u>, 844 F.2d 138, 141 (3d Cir. 1988).

**B.**

We will also affirm the District Court's ruling that the defendants had probable cause to arrest Andros. Probable cause exists when "the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." <u>Orsatti v. N.J. State Police</u>, 71 F.3d 480, 483 (3d Cir. 1995) (citations omitted). This standard requires "more than mere suspicion," but not "evidence sufficient to prove guilt beyond a reasonable doubt." <u>Id.</u> at 482-83. In gauging probable cause, "'[a]n officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists.'" <u>Wilson v. Russo</u>, 212 F.3d 781, 790 (3d Cir. 2000) (quoting <u>Kuehl v. Burtis</u>, 173 F.3d 646, 650 (8th Cir. 1999)).

In this case, the defendants reasonably thought Andros had murdered his wife. Contrary to Andros's allegations, they need not have ignored the available alibi and time of death evidence in order to believe him guilty. Rather, they simply gave that evidence a

different construction, one that was reasonable at the time. Compare Kuehl v. Burtis, 173 F.3d 646, 651 (8th Cir. 1999) (concluding no probable cause existed where police officer refused to even listen to witness's and suspect's alternative account of events); Baptiste v. J. C. Penney Co., 147 F.3d 1252, 1256 (10th Cir. 1998) (finding no probable cause where officer ignored videotape clearly depicting conduct in question in favor of second-hand account of security guards as to their observations of alleged shoplifter). Nor is this a case where further reasonable investigation would have revealed Andros's innocence; the defendants fully explored Andros's potential alibi and available information regarding Ellen's time of death. Compare Bevier v. Hucal, 806 F.2d 123, 128 (7th Cir. 1986) (holding that police had unreasonably disregarded possible clarifying evidence by refusing to question easily available witnesses to suspected child neglect); Bigford v. Taylor, 834 F.2d 1213, 1219 (5th Cir. 1988) (reversing district court's ruling that seizure of truck was reasonable where "minimal further investigation" would have shown it was not stolen).

Andros's alibi was not flawless. Witness accounts as to when he left the Beach Bar varied widely enough that the arresting officers might reasonably have thought Andros arrived home as early as 3:45 or 4 a.m.[1] Meanwhile, the time of death evidence available

---

[1] The District Court rested its ruling on the lack of definitive evidence confirming that Andros had not left the Beach Bar for the forty-five minutes it would have taken him to get home before 4 a.m., murder his wife, and return. Although the defendants did not proffer the theory that Andros left and returned to the bar, our inquiry into probable cause is an objective one, independent of what the investigators subjectively believed.

at the time also was not as conclusive as Andros would have us believe. The medical examiner's statement to investigators that Ellen Andros must have died between 1:45 and 2:15 a.m. was in part predicated on their report that she was automatically signed off her internet account around 2:20 a.m., information that was thrown into serious doubt by America Online's later verification that Ellen had actively logged off. Even the medical examiner's less specific estimate that Ellen Andros died between two and five hours after her last meal at 10 p.m., and thus was "highly unlikely" to have died at 4 a.m., did not render it logically impossible that she was killed by Andros when he arrived home around that time. Moreover, personnel from the county medical examiner's office had made conflicting observations as to some of the other physical evidence, such as the body's level of rigor.

Given the defendants' foundational beliefs—that Ellen Andros was the victim of a homicide, that the murderer was able to enter the house without breaking in, that Ellen did not struggle even enough to wake up her daughters in the same room, and that Andros had in the past treated Ellen abusively and even threatened her life—it was reasonable for them to rely on the possibility that the medical examiner's time of death estimate was not perfect and conclude that Andros murdered Ellen when he returned home around 4 a.m.

See Blaylock v. City of Philadelphia, 504 F.3d 405, 411 (3d Cir. 2007). Still, since we find the defendants' own theory that Andros murdered Ellen upon returning home from the bar at 4 a.m. to be reasonable in light of the evidence available at the time, we need not address this alternative scenario.

Though witness accounts and medical evidence made this scenario unlikely, it was not impossible. In hindsight, with the knowledge that Ellen's death was accidental, the defendants' theory may seem unconvincing, but at the time it provided the only reasonable explanation of Ellen Andros's death. See Graham v. Connor, 490 U.S. 386, 396 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."); Gilles v. Davis, 427 F.3d 197, 207 (3d Cir. 2005) ("The reasonableness of the officer's belief should be judged from that on-scene perspective, not with the perfect vision of hindsight.").

Finally, Andros contends that the police unreasonably failed to pursue the possibility that Calvin Gadd, Ellen's "secret boyfriend," (Appellees' Br. at 12) might have committed the murder. Gadd told the police that he had been home with his son that night and that no one could verify his whereabouts, a statement that was accepted without further investigation. However, "the law does not require that a prosecutor explore every potentially exculpatory lead before filing a criminal complaint or initiating a prosecution." Trabal v. Wells Fargo Armored Serv. Corp., 269 F.3d 243, 251 (3d Cir. 2001). Additionally, in light of our knowledge that Ellen died of natural causes, it is clear that even the most thorough follow-up on Gadd's story would not have revealed that he committed the murder instead of Andros.

Overall, we are satisfied with the District Court's conclusion that a reasonable jury

could not find that the above circumstances were insufficient to support a reasonable belief that Andros had murdered his wife. See Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997) ("The district court may conclude in the appropriate case . . . that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding."). The defendants' conclusion was a reasonable one based on the facts available at the time, even if it would later prove incorrect.

## C.

The District Court ruled that Andros's complaint failed Rule 8(a)(2)'s notice pleading standard with respect to his federal and state claims of deprivation of due process through interference with the family relationship. In so doing, the District Court did not impose a heightened pleading standard on the plaintiff. Andros's allegations regarding the roles of Blitz, Talasnik, and DeShields in his child custody proceedings, themselves relatively vague, fail to take the necessary step of pleading a core element of his claims: how the defendants' actions, right or wrong, subverted the due process afforded to Andros in the form of a procedurally proper custody hearing. Without information on that key aspect of the familial interference claims, the defendants' ability to assert any relevant defenses, such as qualified immunity or failure to state a claim, was

compromised.[2] <u>In re Tower Air, Inc.</u>, 416 F.3d 229, 237 (3d Cir. 2005) ("A plaintiff

should plead basic facts, such as they are, for those are 'the grounds' upon which the

plaintiff's claim rests. Even at the pleading stage, a defendant deserves fair notice of the

general factual background for the plaintiff's claims.").

**III.**

For the foregoing reasons, we affirm the judgment of the District Court

---

[2] Notably, Andros did not take advantage of his opportunity to amend these claims to include more specific factual allegations as to this issue.