# United States Court of Appeals

## For the Eighth Circuit

———————————————

No. 12-2411

———————————————

Stanley Joseph

*Plaintiff - Appellant*

v.

Kenneth L. Allen; Latavia Jones; Edward J. Harper

*Defendants - Appellees*

———————

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

———————

Submitted: March 12, 2013
Filed: April 15, 2013

———————

Before MURPHY, SMITH, and GRUENDER, Circuit Judges.

———————

GRUENDER, Circuit Judge.

This case arises out of a verbal and physical altercation between Stanley Joseph and Latavia Jones and Joseph's subsequent arrest on an assault charge. Joseph appeals the district court's[1] grant of summary judgment in favor of arresting officers

———————————————

[1]The Honorable John A. Ross, United States District Judge for the Eastern District of Missouri.

Kenneth L. Allen and Edward J. Harper of the St. Louis Police Department (collectively, "the officers") on Fourth Amendment claims Joseph brought pursuant to 42 U.S.C. § 1983. Joseph contends that the district court erred in concluding that the officers were entitled to qualified immunity. He also challenges the district court's grant of summary judgment on his state-law claims against the officers and the dismissal of his state-law claim against Jones. For the following reasons, we affirm the district court.

## I. BACKGROUND

At 4:55 p.m. on February 3, 2008, Joseph called 9-1-1 from his residence in the Gentry's Landing apartment complex in downtown St. Louis and told the dispatcher, "A lady is going crazy in my house." Officer Allen arrived at Joseph's apartment, with Lieutenant Harper arriving a short time later. When Officer Allen arrived, he heard loud arguing and saw Joseph standing in the hallway in front of his apartment.[2] Officer Allen observed that Jones was wearing a ripped shirt and had lacerations on her hands and a two-inch cut on her left arm. He also observed that Jones was yelling and appeared upset.

Jones told Officer Allen that the altercation began when she informed Joseph she wanted to end their relationship. According to Jones, Joseph shouted obscenities at her, and then, after she went into another room to collect her belongings, Joseph approached her and grabbed her around the neck. Jones claimed that when she tried to break free, Joseph cut her left arm with a kitchen knife. Officer Allen found a

---

[2]The parties dispute whether Joseph was holding a knife when Officer Allen arrived. The district court concluded that, although this dispute was an issue of fact, it was not material for the purposes of summary judgment. To the extent we consider that determination in reviewing the district court's grant of summary judgment, we view the matter in the light most favorable to Joseph, the nonmoving party. *See Weyrauch v. Cigna Life Ins. Co. of N.Y.*, 416 F.3d 717, 719-20 (8th Cir. 2005).

kitchen knife on the floor inside the apartment, and he seized the knife after Jones told him that it was the knife that cut her. Officer Allen did not observe any injuries to Joseph, although Joseph later testified that he had several scratches.

Jon Jordan lived in an apartment across the hall from Joseph's apartment. Jordan averred that shortly before 5:00 p.m. he heard yelling coming from inside Joseph's apartment. The noise prompted him to go out into the hallway, and although Joseph's door was closed, Jordan said that he could hear banging noises and a woman yelling inside the apartment. Jordan then returned to his apartment but continued to look into the hallway through his peephole. A short time later, he saw Joseph's apartment door open, and he watched Joseph and Jones through his peephole for about ten minutes. Jordan observed Jones throw a pot of water, but he never saw Joseph with a knife. Jordan also reported that he continued to hear Jones yelling. He stated that Jones appeared angry, rather than frightened or scared, while Joseph appeared frustrated. However, Jordan did not see any part of the altercation that took place inside Joseph's apartment. The officers did not obtain a statement from Jordan and did not list him as a witness in their report of the incident.

The officers arrested Joseph and charged him with first-degree assault, a charge that was later amended to second-degree domestic assault. Joseph ultimately was acquitted of the second-degree domestic assault charge. Then, in August 2010, Joseph filed this lawsuit, alleging Fourth Amendment violations as well as state-law claims against the officers based on false arrest and malicious prosecution. Joseph also brought a state-law claim against Jones for malicious prosecution. The officers moved for summary judgment, which the district court granted, concluding that qualified immunity shielded them from suit on Joseph's Fourth Amendment claims and that the existence of probable cause and the doctrine of official immunity shielded them from Joseph's state-law claims. Having granted summary judgment on the claims against the officers, the district court declined to exercise supplemental jurisdiction over the state-law claims against Jones and dismissed them without prejudice. Joseph appeals.

## II. DISCUSSION

This court reviews the district court's grant of summary judgment *de novo*, viewing all evidence and drawing all reasonable inferences in favor of the nonmoving party. *Green v. Dormire*, 691 F.3d 917, 921 (8th Cir. 2012). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

### A. Fourth Amendment Claims

As a preliminary matter, we must address Joseph's argument that the officers waived the defense of qualified immunity by failing to plead it in a timely fashion. Joseph contends that the officers waived the qualified immunity defense because they did not plead it until they filed their amended answer to Joseph's amended complaint, which they filed after Joseph filed his response to their motion for summary judgment. However, a defense is not waived if defendants properly amend their answer to include it. *Groninger v. Davison*, 364 F.2d 638, 639-40 (8th Cir. 1966). Here, the officers moved for leave to amend their answer to include the defense of qualified immunity, and the district court granted that motion. Joseph did not oppose the motion before the district court; rather he raises the issue for the first time on appeal. Therefore, the argument is waived. *See Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 725 (8th Cir. 2002).[3]

---

[3]Even if Joseph had raised the argument before the district court, he fails to explain on appeal how the district court's order granting the officers' motion for leave to amend constitutes reversible error. *See Chesnut v. St. Louis Cnty., Mo.*, 656 F.2d 343, 349 (8th Cir. 1981) ("Amendments should be allowed with liberality, and when justice so requires, even after defendant has served the moving party with a motion for summary judgment." (internal citation omitted)).

We now turn to the substance of Joseph's arguments concerning the district court's grant of qualified immunity. Qualified immunity shields law enforcement officers from suit if they "[did] not violate [a] clearly established statutory or constitutional right[] of which a reasonable person would have known." *Gorra v. Hanson*, 880 F.2d 95, 97 (8th Cir. 1989) (first alteration in original) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Under this "objective legal reasonableness standard," courts may not delve into the officers' subjective motivation for their actions. *Id.* (quoting *Harlow*, 457 U.S. at 819). However, qualified immunity allows officers to make reasonable errors, *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996), and protects "all but the plainly incompetent or those who knowingly violate the law," *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)). In this case, Joseph brings two Fourth Amendment claims against the officers pursuant to § 1983, one for false arrest and the other for malicious prosecution. We address each in turn.

### 1. False Arrest

Joseph argues that the district court erred in concluding that qualified immunity bars his Fourth Amendment false arrest claim because the officers lacked probable cause to arrest him. "It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." *Marksmeier v. Davie*, 622 F.3d 896, 900 (8th Cir. 2010) (quoting *Hannah v. City of Overland, Mo.*, 795 F.2d 1385, 1389 (8th Cir. 1986)). An officer, however, is entitled to qualified immunity for a warrantless arrest if the arrest was supported by at least "arguable probable cause." *Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2011) (quoting *Walker*, 414 F.3d at 992). Probable cause exists when "the totality of the circumstances at the time of the arrest '[is] sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Id.* at 523 (quoting *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010)). "Arguable probable cause exists even where an officer mistakenly arrests

a suspect believing it is based on probable cause if the mistake is 'objectively reasonable.'" *Id.* (quoting *Armine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008)). The fact that the person arrested is later found innocent is not material. *Linn v. Garcia*, 531 F.2d 855, 861 (8th Cir. 1976). Whether a law enforcement officer had probable cause at the time of arrest is a question of law. *Fisher*, 619 F.3d at 816.

Joseph contends that the officers did not have probable cause to arrest Joseph for first-degree assault, an offense requiring that, at minimum, a person "knowingly cause[] or attempt[] to cause serious physical injury to another person," Mo. Rev. Stat. § 565.05. This is because, he argues, the totality of the circumstances did not establish that Joseph caused *serious* physical injury to Jones as the statute requires. Based on the undisputed parts of the record, however, we conclude that a reasonable officer could have believed that Joseph had attempted to cause serious physical injury to Jones. When Officer Allen arrived at Joseph's apartment complex, he heard loud arguing and saw Jones in a ripped shirt. Jones was yelling and appeared upset, and she had lacerations on her hands and a two-inch cut on her left arm. Jones told Officer Allen that she and Joseph had a verbal altercation and that during that altercation, Joseph grabbed her around the neck and cut her left arm with a kitchen knife as she attempted to break free. Officer Allen found a kitchen knife on the floor of the apartment, which Jones identified as the knife that cut her. Officer Allen also saw that Joseph did not appear injured. The officers were entitled to rely on what Jones told them about the incident. *See Borgman*, 646 F.3d at 523 (explaining that "[o]fficers may 'rely on the veracity of information supplied by the victim of a crime'" (quoting *Fisher*, 619 F.3d at 817)). Further, Jones's physical injuries, as well as other evidence at the scene, corroborated Jones's statements, providing indicia of reliability. Thus, based on the totality of the circumstances, it was reasonable for the officers to believe that Joseph was the aggressor and that he had at least *attempted* to cause serious physical injuries to Jones. Therefore, we have no difficulty in concluding that the officers had probable cause for arrest, much less arguable probable cause.

Nevertheless, Joseph contends that the officers lacked probable cause because they did not obtain a statement from Joseph's neighbor, Jon Jordan. Joseph argues that his case is similar to *Kuehl v. Burtis*, 173 F.3d 646 (8th Cir. 1999). In *Kuehl* we held that a law enforcement officer lacked probable cause to arrest a store owner for assaulting a customer where the officer failed to interview someone who "witnessed the entire altercation" and who would have refuted any belief that the store owner had committed a crime. *Id.* at 648-51. The officer declined to interview a store employee who would have revealed that the customer was the aggressor and that the store owner struck the customer inadvertently while trying to call the police. *Id.* at 651. In this case, however, Jordan at first heard only yelling, could not see what occurred inside Joseph's apartment, and did not witness the entire altercation. As a result, Jordan could not have known whether Jones or Joseph was the aggressor. Moreover, unlike the employee's testimony in *Kuehl*, Jordan's testimony was not plainly exculpatory. At most, his statements amounted to conflicting evidence. Because Jordan did not see the entire dispute, particularly the portion that took place inside the apartment, the officers could have believed his statements while also believing that Joseph assaulted Jones inside the apartment.[4]

The law does not require law enforcement officers to conduct a perfect investigation to avoid suit for false arrest. *See Stepnes v. Ritschel*, 663 F.3d 952, 961 (8th Cir. 2011) ("[O]fficers are not required to conduct a 'mini-trial' before arrest."

---

[4]Joseph likewise faults the officers' failure to take a statement from him prior to the arrest. Officer Allen contends that Joseph refused to speak to him or provide any statements regarding the incident. Joseph, however, claims that Officer Allen did not attempt to obtain his side of the story and told him to "shut up." As required on a motion for summary judgment, we view the facts in the light most favorable to Joseph, but we nonetheless agree with the district court that the fact is not material as a reasonable officer could have believed that Joseph committed an assault despite Joseph's explanation of events. *See Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988) (holding that suspect's plausible explanation of events did not require officer "to forego arrest pending further investigation if the facts as initially discovered provide[d] probable cause").

(quoting *Amrine*, 522 F.3d at 832)). Based on Jones's verified injuries, her statements to Officer Allen, the physical evidence consistent with her statement, and the lack of an eyewitness who could directly negate that evidence, it was reasonable for the officers to believe that Joseph had committed an assault. Therefore, they had probable cause to arrest Joseph, and the district court did not err in concluding that they were entitled to qualified immunity on Joseph's false arrest claim.

### 2. Malicious Prosecution

Joseph also brings a Fourth Amendment claim based on malicious prosecution on the grounds the officers lacked probable cause to instigate a criminal prosecution. However, we held in *Kurtz v. City of Shrewbury*, 245 F.3d 753 (8th Cir. 2001), that an allegation of malicious prosecution without more cannot sustain a civil rights claim under § 1983, *see id.* at 758, and Joseph concedes that we are bound by that holding. *See also Brown v. First Nat'l Bank in Lenox*, 844 F.2d 580, 582 (8th Cir. 1988) ("[O]ne panel of this Court is not at liberty to overrule an opinion filed by another panel. Only the Court en banc may take such a step."). Therefore, under our holding in *Kurtz*, Joseph's allegation of malicious prosecution cannot sustain a valid claim under § 1983. Even if *Kurtz* did not preclude Joseph's malicious prosecution claim, summary judgment in favor of the officers nonetheless would be proper because, as explained above, the record shows that the officers had probable cause to arrest Joseph and initiate criminal prosecution.

### B. State-Law Claims

In addition to his Fourth Amendment claims, Joseph's complaint also included state-law claims against the officers for false arrest and malicious prosecution. For both false arrest and malicious prosecution claims, Missouri law requires a plaintiff to establish that the defendant lacked probable cause for the arrest or prosecution. *Rustici v. Weidemeyer*, 673 S.W.2d 762, 767 (Mo. banc 1995) (false arrest); *Sanders v. Daniel Int'l Corp.*, 682 S.W.2d 803, 807 (Mo. banc 1984) (malicious prosecution).

Probable cause is defined identically under Missouri law and federal law. *See State v. Tokar*, 918 S.W.2d 753, 767 (Mo. banc 1996) ("Probable cause to arrest exists when the arresting officer's knowledge of the particular facts and circumstances is sufficient to warrant a prudent person's belief that a suspect has committed an offense."). Therefore, if officers had probable cause to believe Joseph had committed an assault, then Joseph cannot prevail on his state-law claims.

First, however, we must determine whether, under Missouri law, the presence of probable cause is a question of fact or one of law. Joseph argues that the district court erred in finding that the officers were entitled to judgment as a matter of law because probable cause is a question of fact for the jury. *See Highfill v. Hale*, 186 S.W.3d 277, 283 (Mo. banc 2006); *Signorino v. Nat'l Super Markets, Inc.*, 782 S.W.2d 100, 103 (Mo. Ct. App. 1989). Joseph, however, omits the condition on which the existence of probable cause becomes a jury question. When determining whether probable cause existed, a jury must determine the facts "[i]f the material facts are in dispute, with one version establishing reasonable grounds [for arrest] and another refuting it." *Signorino*, 782 S.W.2d at 103; *see also Redican v. K-Mart Corp.*, 734 S.W.2d 864, 868 (Mo. Ct. App. 1987). "However, where the evidence is not conflicting, or where the facts are conceded, . . . the relevant question is one of law for the court to decide." *Linkogel v. Baker Protective Servs., Inc.*, 659 S.W.2d 300, 304 (Mo. Ct. App. 1983). Here, there are no material facts in dispute such that one version establishes reasonable grounds for arrest and the other does not, and, as detailed above, even the version taking all disputed facts in the light most favorable to Joseph establishes that the officers had probable cause to arrest Joseph for assault. Therefore, the district court properly granted summary judgment on Joseph's state-law claims.[5]

---

[5]Because we conclude that the district court properly granted summary judgment on these claims in favor of the officers as they had probable cause for the arrest, we need not decide whether the district court correctly concluded that summary judgment also was proper under the doctrine of official immunity.

For the foregoing reasons, we affirm the judgment of the district court.[6]

_____

_____

[6]Although Joseph also asks us to reverse the district court's dismissal of his malicious prosecution claim against Jones, his brief does not provide any reason why the district court's dismissal was improper. Because the district court properly granted summary judgment in favor of the officers on Joseph's federal and state-law claims, it did not abuse its discretion when it declined to exercise supplemental jurisdiction over Joseph's state-law claim against Jones. *See Barstad v. Murray Cnty.*, 420 F.3d 880, 888 (8th Cir. 2005).