## United States Court of Appeals
### For the Eighth Circuit

_____

No. 13-1292
_____

Cynthia Shelton Clayborn

*Plaintiff - Appellant*

v.

Dennis Struebing; Stephen Aspinall

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: September 26, 2013
Filed: October 16, 2013
_____

Before LOKEN, COLLOTON, and BENTON, Circuit Judges.
_____

BENTON, Circuit Judge.

Cynthia Shelton Clayborn was arrested on suspicion of passing a forged $100 bill. She sued two police officers, Dennis Struebing and Stephen Aspinall, under 42 U.S.C. § 1983. She alleged violation of her Fourth Amendment right against arrest

without probable cause. The district court[1] granted summary judgment to the officers, finding Clayborn failed to establish violation of her constitutional rights, and the officers were entitled to qualified immunity. Clayborn appeals, alleging the officers failed to conduct a minimally sufficient investigation before arresting her. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

Summary judgment is appropriate when, construing the evidence most favorably to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. **Fed. R. Civ. P. 56**; *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 775 (8th Cir. 1995). Summary judgment is subject to de novo review, drawing all reasonable inferences from the record in favor of the nonmoving party. *Wenzel v. Missouri-Am. Water Co.*, 404 F.3d 1038, 1039 (8th Cir. 2005).

This court also reviews de novo the finding of qualified immunity. *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 846 (8th Cir. 2011). "Qualified immunity protects governmental officials from liability for civil damages if they have not violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Akins v. Epperly*, 588 F.3d 1178, 1183 (8th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The qualified immunity doctrine provides "protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). It "allows officers to make reasonable errors." *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996). Officers are allowed considerable room for "mistaken judgments." *Borgman v. Kedley*, 646 F.3d 518, 522 (8th Cir. 2011). Qualified immunity applies

---

[1]The Honorable Terry I. Adelman, United States Magistrate Judge for the Eastern District of Missouri, sitting by agreement of the parties under 28 U.S.C. § 636(c).

if there is even "arguable probable cause" for an arrest.  *Id.* at 523 (quoting *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005)).

Examining qualified immunity, this court applies a two-part test.  First, "whether the facts alleged, construed in the light most favorable to [the plaintiff], establish a violation of a constitutional or statutory right," and second, "whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that her actions were unlawful."  *Keil v. Triveline*, 661 F.3d 981, 985 (8th Cir. 2011).  The officers may be mistaken as to the existence of probable cause, but the mistake must be "objectively reasonable."  *Id.* (quoting *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008)).  Objective reasonableness depends on "the totality of the circumstances."  *Borgman*, 646 F.3d at 523.

On January 30, 2010, Clayborn patronized the "andy W.O.W!" restaurant in the food court of the Chesterfield Mall, in Missouri.  Within the hour, an employee reported to the police that a counterfeit $100 bill had been passed.  The employee told police that mall security was following the woman who passed the bill.  Mall security directed the police to Clayborn.  The officers confronted her.  She denied passing the bill.  Although Clayborn had thrown away her receipt, she recalled paying with a $20 bill, or a $10 bill and three $1 bills as her memory refreshed.

In a food court trash can, Clayborn found the missing receipt for an order paid with $13 cash.  An employee stated this receipt was for a later purchase by another member of Clayborn's group.  The employee said that Clayborn had passed the counterfeit bill in a transaction half an hour before the $13 transaction.  A second employee identified Clayborn as passing the bill.  The officers arrested Clayborn.  She was detained at the police station and charged with forgery.  Though she was indicted, the charge was dropped before trial.

Clayborn argues that the officers lacked probable cause to arrest her, when, after her receipt was found in the trash, they failed to conduct sufficient further investigation. She relies primarily on **Kuehl v. Burtis**, 173 F.3d 646 (8th Cir. 1999), where this court found "probable cause does not exist when a 'minimal further investigation' would have exonerated the suspect." **Id.** at 650. There, Kuehl was arrested after an officer refused to listen to the only witness who saw the entire altercation, and after speaking to Kuehl for only 20 seconds. **Id.** at 648-49.

Here, in contrast, the officers arguably had probable cause when two witnesses identified Clayborn as the individual passing the counterfeit bill, and she herself made inconsistent statements about the bills she used. Also, after her receipt was found—at the point Clayborn contends no minimal investigation took place—an officer returned to the restaurant, obtained its copies of the receipts, and discussed the transactions with a restaurant employee. The lack of investigation in *Kuehl* is absent. Officers "need not conduct a 'mini-trial' before making an arrest . . . ." **Id**. at 650.

Clayborn suggests a number of ways the officers may have investigated further, such as viewing video surveillance footage, making a timeline of her activities at the mall, further discussion with mall security, or a search of her wallet. The officers had no duty to conduct further investigation once they had (arguable) probable cause to arrest. *See* **Amrine v. Brooks**, 522 F.3d 823, 832 (8th Cir. 2008) ("As probable cause is determined 'at the moment the arrest [is] made,' any later developed facts are irrelevant to the probable cause analysis for an arrest.") (quoting **United States v. Rivera**, 370 F.3d 730, 733 (8th Cir. 2004)); **Matthews v. City of E. St. Louis**, 675 F.3d 703, 707 (7th Cir. 2012) (holding that once probable cause is developed, officers have "no constitutional obligation to conduct further investigation in the hopes of uncovering potentially exculpatory evidence").

Clayborn's other cases are not persuasive. The officers did not disregard "plainly exculpatory" evidence, as occurred in *Kuehl* where the arresting officer

ignored the only witness to the entire altercation even after that witness tried to explain the scene. *Kuehl*, 173 F.3d at 648-50. The witnesses here did not base their allegations on video the officers themselves had viewed. *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1256-57 (10th Cir. 1998). The officers' suspicion also would not have been dispelled by briefly questioning anyone at the scene. *Eubanks v. Lawson*, 122 F.3d 639, 642 (8th Cir. 1997).

Based on the totality of the circumstances, the officers had arguable probable cause to arrest Clayborn. The officers' conduct did not show plain incompetence or a knowing violation of the law. The officers are entitled to qualified immunity.

\* \* \* \* \* \* \*

The judgment of the district court is affirmed.

_____