NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2570
_____

RASHEED WATERS,
Appellant

v.

CHELTENHAM TOWNSHIP d/b/a CHELTENHAM TOWNSHIP POLICE
DEPARTMENT; JOHN BARR, Individually and in his official capacity
as Detective for CTPD
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. No. 2-16-cv-00216)
District Judge: Honorable Timothy J. Savage
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 16, 2017
_____

Before: GREENAWAY, JR., SHWARTZ, and GREENBERG, *Circuit Judges*.

(Filed: July18, 2017)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

Rasheed Waters sat in jail for more than a year awaiting trial for a crime he did not commit. He had a verifiable alibi, supported by video surveillance, which he claims the investigating officer ignored. At trial, the trial judge reviewed the footage of the video surveillance and dismissed the criminal charges. Waters, almost two years later, brought this malicious prosecution action pursuant to 42 U.S.C. § 1983 and Pennsylvania common law against the municipality and the officer that investigated the crime.

Waters initially asserted four claims, but after he amended his complaint, only one claim remained: malicious prosecution. The District Court dismissed the claim because Waters failed to plead that the criminal proceeding was initiated without probable cause, a necessary element in a malicious prosecution claim. We agree, and therefore, will affirm the District Court.

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

A.      **Factual Background**

In August 2012, Waters was apartment-sitting for his mother, who was away on vacation with her fiancé. The fiancé died during the vacation; his daughter, in turn, went to Waters's mother's apartment ostensibly to collect his belongings. Waters soon learned—from his mother and the decedent's sister—that the daughter was not supposed to remove those items. So he subsequently called the police to report the items missing.

About one month later, Detective John Barr of the Cheltenham Township (the "Township") Police Department called Waters and questioned him about one of the

2

missing items—a firearm. Waters told Barr that he had already told the police everything he knew, and that if Barr wanted to learn more, he should question the decedent's daughter. But Barr persisted, questioning Waters as if he were a suspect. Waters became frustrated, shouted at Barr, and told him not to call him again.

Another month passed when, while driving through Upper Darby, Pennsylvania, Waters was pulled over by the police. The officers told Waters that they were arresting him pursuant to a warrant issued in Montgomery County, Pennsylvania, where the Township is located. The Upper Darby police held Waters at the station for hours without telling him why he was arrested.

Waters was transferred to the Township shortly after midnight. At some point while Waters was sitting in his holding cell, Barr appeared and told him, "[f]or someone being detained for what you're being detained for, you seem awfully calm." App. 4 ¶ 16. Barr went on to say that he had already located the missing firearm, and that Waters was being held for three counts of burglary. Waters asked to speak with an attorney. Barr said nothing and walked away.

Waters was transferred to the Montgomery County Correction Facility the next day. Waters received the substance of the burglary charges against him and the grounds for the arrest warrant. The basis for probable cause was a single eyewitness, who would prove unreliable at trial. Waters soon recalled, and told Barr, that at the time and date of the alleged burglaries, he was out shopping, and that the stores he was shopping at had surveillance systems that could confirm his presence. Barr ignored the alibi.

Waters spoke with his trial attorney, who, by the end of the week, obtained the surveillance footage that confirmed Waters's alibi. The trial attorney told Barr, but Barr again ignored the alibi.

At trial, Waters's attorney presented the trial judge with the surveillance footage and an employee from one of the stores to authenticate the footage. The trial court judge then dismissed the case and admonished the Defendants for bringing it forward. Waters was finally released on January 27, 2014, about sixteen months after he was arrested.

## B.     Procedural History

Waters filed the instant § 1983 action in federal district court alleging malicious prosecution, false arrest, false imprisonment, and *Monell* claims.[1] The Township and Barr (the "Defendants") then moved to dismiss the false arrest and false imprisonment claims as time barred, and moved for a more definite statement as to the malicious prosecution claim.[2] Waters, in response, filed an amended complaint ("Amended

---

[1] While he was in custody, Waters brought a separate *pro se* § 1983 action. Complaint, *Waters v. Barr*, No. 13-cv-672 (E.D. Pa. Mar. 8, 2013), ECF No. 7. The District Court stayed the proceeding until Waters informed the Court that his criminal case had been resolved. Order, *Waters v. Barr*, No. 13-cv-672 (E.D. Pa. Mar. 13, 2013), ECF No. 8. The District Court ended up dismissing the *pro se* action for failure to prosecute because Waters never contacted the District Court after his release. Order, *Waters v. Barr*, No. 13-cv-672 (E.D. Pa. Mar. 13, 2013), ECF No. 11.

[2] Waters alleges that his malicious prosecution claim is actionable through § 1983 and Pennsylvania common law.

4

Complaint") that contained only the malicious prosecution claim, with some additional factual allegations.[3]  The Defendants answered and moved for judgment on the pleadings.

The District Court granted the Defendants' motion, finding that the "criminal proceedings were initiated by an arrest warrant based upon an eyewitness identification of Waters as the perpetrator."  *Waters v. Cheltenham Twp.*, No. 16-216, 2016 WL 1594951, at *3 (E.D. Pa. Apr. 20, 2016).  And "[t]here [were] no allegations that Barr knowingly or recklessly made false statements or omissions in applying for the warrant." *Id.*  Thus, Waters failed to "establish an essential element of a malicious prosecution claim—lack of probable cause." *Id.*  This timely appeal followed.

II.    JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.  We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

Our review of a district court's order granting a Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings is plenary.  *See, e.g.*, *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 146 (3d Cir. 2013).  Because this Rule 12(c) motion is based on the theory that the plaintiff failed to state a claim, we will apply the same standard that we apply to a Rule 12(b)(6) motion to dismiss.  *Id.* at 146–47.  And "[w]e [will] grant the motion only if, viewing all the facts in the light most favorable to the nonmoving party, no material [dispute] of fact remains and the moving party is

---

[3] The District Court denied Defendants' motion to dismiss as moot, presumably in light of Waters filing the Amended Complaint.

entitled to judgment as a matter of law." *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 257 (3d Cir. 2012).

## III. ANALYSIS

For Waters to prevail on a malicious prosecution under § 1983, he must prove five elements:

(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003).[4] The District Court ruled that Waters failed to establish the third element—the proceeding was initiated without probable cause.[5] We agree.

Here, Waters was arrested pursuant to a warrant, which generally establishes the proceeding was initiated with probable cause. But "an arrest warrant issued by a magistrate or judge does not, in itself, shelter an officer from liability for false arrest." *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000). Where a plaintiff challenges the basis

---

[4] The first four elements are the same under Pennsylvania common law. *See Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791–92 (3d Cir. 2000) (observing that a plaintiff alleging a § 1983 claim for malicious prosecution must show a Fourth Amendment violation, in addition to the four elements of common law malicious prosecution).

[5] We note, but do not address, Defendants' other arguments: that Waters cannot show that Barr "initiated the proceedings," Appellees' Br. at 11; that Barr is entitled to qualified immunity, *id.* at 21–23; and that Waters cannot establish a valid *Monnell* claim against the Township, *id.* at 23–25.

for probable cause, as Waters does, we must determine whether the officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant." *Id.* If so, we then determine whether "such statements or omissions are material, or necessary, to the finding of probable cause." *Id.* at 787.

Waters does not claim that Barr made any material false statements or omissions. Instead, Waters attacks the basis for probable cause four different ways, but none of them are sufficient to support his malicious prosecution claim.

First, Waters alleges that the eyewitness upon whom the police relied was unreliable, and thus, his identification could not have formed the basis for probable cause. He points to cases where courts reviewed the credibility of witnesses that law enforcement relied on to obtain search warrants. These cases are inapposite because it was reasonable for the police to believe the eyewitness was telling the truth when they initiated the prosecution. *See Sharrar v. Felsing*, 128 F.3d 810, 818–19 (3d Cir. 1997) ("When an officer has received his information from some person—normally the putative victim or an eye witness[sic]—who it seems reasonable to believe is telling the truth, he has probable cause." (quoting *Grimm v. Churchill*, 932 F.2d 674, 675 (7th Cir. 1991))), *abrogated on other grounds by Curley v. Klem*, 499 F.3d 199 (3d Cir. 2007).

Second, Waters asserts that the police "could (and should) have easily obtained the video evidence on their own without any assistance from Plaintiff's criminal defense attorney." App. 5 ¶ 22. However, at the time Barr applied for the arrest warrant, he was

unaware of this footage; he had no reason to know that Waters was out shopping, let alone that there was footage to confirm Waters's alibi.

And even though the footage ultimately led to the withdrawal of criminal charges, we still determine whether the proceeding was initiated without probable cause "based on the information available to officers *at the time the [arrest] warrant was sought*." *Marasco*, 318 F.3d at 522 (emphasis added). So once Barr had a reasonable basis to believe there was probable cause, he was not constitutionally required to "investigate independently every claim of innocence," such as "mistaken identity." *Baker v. McCollan*, 443 U.S. 137, 146 (1979). Therefore, the exculpatory footage that Waters provided the police post-warrant application does not establish the third element of his malicious prosecution claim.

Third, Waters claims the police erred by not *reviewing* the exculpatory video after his attorney purportedly gave Barr the video. *See* Appellant's Br. at 21 ("An officer is not free to disregard plainly exculpatory evidence even if substantial inculpatory evidence (standing alone) suggest that probable cause exists."). He cites two cases for support: *Burke v. Town Of Walpole*, 405 F.3d 66 (1st Cir. 2005) and *Kuehl v. Burtis*, 173 F.3d 646 (8th Cir. 1999). Both are distinguishable.

In *Burke*, a police officer that was preparing a warrant application intentionally or recklessly withheld exculpatory evidence; thus, for purposes of summary judgment analysis, the plaintiff proffered evidence to support a finding that he was arrested without probable cause. *Burke*, 405 F.3d at 83–84. But unlike what Waters alleges here, the

officer in *Burke* knew of the exculpatory evidence at the time of the warrant application. *Id.* at 84.

Then there is *Kuehl*, where the Eighth Circuit found that a police officer "ignored plainly exculpatory evidence that negated the intent required for simple assault." 173 F.3d at 651. The Court faulted the police officer for ignoring (1) the plaintiff's explanation for why she shoved the purported victim; (2) the plaintiff's sizeable bruise over her left eye (caused by a punch from the purported victim); and (3) the testimony of another eyewitness that would have corroborated the plaintiff's account of what happened *before* the officer arrested the plaintiff. *Id.* Again, Waters's comparison falls short because the substantial eyewitness testimony in *Kuehl* was available to the police officer before he arrested the plaintiff.

Finally, Waters floats a theory for relief that was not spelled out in the Amended Complaint: prolonged detention in the face of exculpatory evidence. *See* Appellant's Br. at 21 ("Post-arrest, Waters was length[ily] imprisoned awaiting trial notwithstanding the existence of an exculpatory video."); *id.* ("Plaintiff's expressed innocence via alibi, and the video supporting that alibi gives rise to a 14th amendment post-arrest claim in malicious prosecution for unlawful[ly] prolonged detention.").

This unlawfully prolonged detention theory is distinct from the malicious prosecution claim that Waters pled and briefed before the District Court. *See, e.g.*, *Russo v. City of Bridgeport*, 479 F.3d 196, 209 (2d Cir. 2007) (describing false imprisonment claim as covered by the Fourth Amendment and sufficiently alleged given "(1) the length

of time of [plaintiff's] wrongful incarceration, (2) the ease with which the evidence exculpating [plaintiff]—which was in the officers' possession—could have been checked, and (3) the alleged intentionality of [the investigating officers'] behavior"); *Sanders v. English*, 950 F.2d 1152, 1162 (5th Cir. 1992) (describing illegal detention, or false imprisonment, as a claim where defendant-officer fails to release plaintiff "even after he knew (or should have known) that [plaintiff] ha[s] been misidentified").

Because this is a claim that Waters did not raise in the Amended Complaint or in his brief before the District Court, it is not properly before this Court. *See New Jersey v. United States*, 91 F.3d 463, 471 (3d Cir. 1996).

IV. **CONCLUSION**

For these reasons, we will affirm the District Court's judgment.